Ronald ROSELLI, Jr.

v.

SHELL OIL COMPANY.

Civ. A. No. 66-748.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 21, 1968.

Samuel C. Gainsburgh, Kierr & Gainsburgh, New Orleans, La., for plaintiff.

Ernest A. Carrere, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Shell Oil Co.

Miranne, Grevemberg, & Organ, Donald V. Organ, New Orleans, La., Trial Atty., for Watts Const. Co.

MITCHELL, District Judge.

Ronald Roselli, Jr. filed suit against Shell Oil Company, pursuant to the provisions of the General Maritime Law of the United States, including the warranty of seaworthiness embodied therein, and the provisions of the Longshoremen's & Harbor Workers' Compensation Act seeking damages for injuries he al-

legedly received while assisting in unloading the M/V CC-1, a vessel allegedly owned or operated by Shell. At the time of the accident, Roselli was employed by Watts Construction Company, which was engaged in unloading the CC-1 pursuant to a contract with Shell.

Shell filed a third party complaint against Watts, under the terms of an indemnification agreement existing between Watts and Shell. Shell settled with Roselli and the only issue before this Court is whether or not Shell is entitled to indemnification from Watts.

The Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I

On November 24, 1965, Watts Construction Company, Inc. was under a written contract with Shell Oil Company to provide men, material and implements to perform general laboring duties on various Shell properties and plaintiff, Ronald Roselli, Jr., was one of Watts' employees.

### II

At the time of the accident, Roselli and an unidentified man, probably another Watts employee, were working as hookup men aboard the M/V CC-1, a small cargo vessel owned by Shell, assisting in unloading that vessel. It was evening and the area was sufficiently lighted. Their job was to attach the hoisting gear to equipment being unloaded from the CC-1 by a crane which was located on the dock to which the vessel was tied. The crane was being operated by Garland Thornhill, a Shell employee. Roselli was injured while a portable compressor was being unloaded.

### III

The crane operator had been taking his signals from Dwight May, Watts' crew pusher, and usually did not operate his crane except in accordance with signals from May.

### IV

At the time of the accident, May was on the dock sorting fishing tools.

### V

The procedure being followed by Thornhill and the hookup man was as follows: the hoisting hooks from the crane were inserted in lifting eyes in whatever equipment was to be unloaded; the hookup men would then hold the hooks in place until May would give a signal to Thornhill, who thereupon would slowly take the slack out of the line in order to dislodge the hooks. Thereafter, the hookup men would release the hook, step back from the load and May would then signal Thornhill to lift the load off of the vessel and onto the dock.

### VI

At the time of the accident, Roselli had inserted one of the two hooks which he was holding, i. e., the right one, into the hoisting eye of a compressor and was preparing to insert the left hook therein when Thornhill, without having received a signal from anyone or waiting to take up slack, hoisted the load off the vessel. Roselli's left thumb was caught between the eye of the cable and the hook, causing Roselli to be lifted bodily several feet above the deck of the vessel. The distal portion of Roselli's thumb was pinched off, causing him to fall to the deck.

### VII

The sole cause of the accident was the negligence of the crane operator, Thornhill, in acting without proper signals, failing to follow usual procedures, and disregarding the safety of the hookup men.

### VIII

The contract of indemnity provides in part that:

"Contractor shall indemnify Shell and hold it harmless from and against all claims of and liability to third parties (including, without limitation, all em-

## 1397

ployees of Shell or Contractor and all subcontractors and their employees) for injury to or death of persons or loss of or damage to property arising out of or in connection with the performance of this contract, *except where such injury, death, loss or damage has resulted from the negligence of Shell without negligence or fault on the part of Contractor or any subcontractor.*"

### IX

The lighting equipment in the working area of Shell's yard was adequate and provided sufficient light to adequately and safely conduct the unloading operation of the M/V CC–1.

### X

Shell's M/V CC–1 was seaworthy.

## CONCLUSIONS OF LAW

### I

 For the purposes of this decision, it is unnecessary to determine if the contract between Shell Oil Company and Watts Construction Company, Inc. is a maritime contract, carrying with it the implied warranty of workmanlike performance for, even if such a warranty existed, it was not breached by Watts.

### II

 Additionally, the terms of the indemnity agreement superseded any implied warranty of workmanlike performance.[1] Under the terms of the indemnity agreement, Shell could not recover from Watts when the injury resulted from the negligence of Shell, without negligence or fault on the part of Watts.

### III

 Under the indemnity agreement, no liability exists on the part of Watts Construction Company, Inc. to Shell Oil Company.

### IV

Shell Oil Company is solely responsible for any injuries sustained by Ronald Roselli, Jr. on November 24, 1965, aboard the M/V CC–1.

Let judgment be entered accordingly.

---

1. D'Agosta v. Royal Netherlands Steamship Co., 301 F.2d 105 (CA 2–1962).