**Melvin BENTON**

v.

**UNITED STATES of America**

and

**Jarka Corporation of Baltimore and United States Lines, Inc., and SS AMERICAN PACKER, her engines, tackle, equipment, etc.**

**Civ. No. 20056.**

United States District Court,
D. Maryland.

Nov. 14, 1969.

Supplemental Opinion June 8, 1970.

Jerome B. Monfred, Monfred, Lentz, & Hooper, Baltimore, Md., for plaintiff.

Anthony W. Gross and Hall Baetz, Attorneys, Admiralty & Shipping Section, Department of Justice, Washington, D. C., for the United States.

Eugene A. Edgett, Jr., and Henry G. Meredith, Jr., Baltimore, Md., for Jarka.

John H. Skeen, Jr., Baltimore, Md., for United States Lines and SS American Packer.

Anthony W. Gross, Department of Justice, Washington, D. C., for defendant and third-party plaintiff.

THOMSEN, Chief Judge.

This case is a sequel to Benton v. United States Lines, 297 F.Supp. 87 (D. Md.1968), aff'd 408 F.2d 378 (4 Cir. 1968). In that case Benton, a ship ceiler, working on board the SS American Packer, alleged that he had been struck by a wrench negligently thrown into the hold by a civilian employee of the United States Army, who was on the ship supervising the stowing of military vehicles. Benton sued the United States Lines, as owner of the vessel, charging negligence and unseaworthiness based upon an alleged failure of the defendant to provide a safe place and proper gear for his work. Summary judgment for the defendant was granted and affirmed.

In the present case Benton has filed a complaint against the government under the Federal Tort Claims Act, 28 U.S.C. A. §§ 1346(b), 2671 et seq., based on the alleged negligence of the government employee in throwing a wrench into the hold.

The government has filed a third-party complaint against the stevedore (Jarka), the vessel and her owner, stating that its claim for relief is an admiralty and maritime claim within the meaning of Rule 9(h), F.R.Civ.P. Each of the defendants has moved to dismiss the third-party complaint against it.

A. The claim against Jarka is based upon a contract between Jarka and the government under which Jarka agreed to provide stevedoring and related terminal services at Baltimore for the period October 1, 1965, to September 30, 1967, and, at the time of the alleged injury was loading Department of Defense cargo aboard the American Packer. The government alleges that under terms of that contract Jarka agreed to perform stevedoring services in a careful and workmanlike manner; that by reason of its undertaking Jarka "was obligated to perform said service in a manner so as not to visit liability upon the United States, to exercise due and proper care in the performance of the stevedoring services, to insure that all gear, equipment and appliances furnished or utilized by it to perform said services were fit for the purpose for which they were to be used, and make all necessary efforts to prevent accidents or injuries to all persons in and near the work areas, gear, equipment and appliances in its custody and control during the performance of said work, to warn all persons and prevent them from exposing themselves to dangerous conditions which might arise during the course of said work, and to stop all work until such dangerous conditions were corrected"; and that Jarka failed and neglected to perform these obligations in a proper, skillful, professional and workmanlike manner.

The government's claim against Jarka is that "[i]f plaintiff sustained injuries as alleged in the complaint, which is expressly denied", such injuries arose out of the faulty and negligent performance by Jarka in breach of its contractual obligations and its warranties of safe equipment and workmanlike services, and therefore Jarka is liable to the government for damages foreseeably resulting from such breach.

Jarka's motion to dismiss (aside from an unwarranted objection to the customary conditional allegations of the third-party complaint) raises two points:

1. "That although Rule 14(a) and 14(c) of the Federal Rules of Civil Procedure provide for Third-Party Practice, they do not authorize an indemnity action under Admiralty practice to be styled as a Third-Party Claim and served upon this Third-Party Defendant in a case brought on the Civil side under the provisions of Title 28 U.S.C. 1345."

There is no merit in this contention. It ignores the unification of the civil and admiralty procedure. Rule 14(a), as amended in 1966, provides in pertinent part: "At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him * * * The third party complaint, if within the admiralty and maritime jurisdiction, may be in rem against a vessel, cargo, or other property subject to admiralty or maritime process in rem, in which case references in this rule to the summons include the warrant of arrest, and references to the third-party plaintiff or defendant include, where appropriate, the claimant of the property arrested". So, even though the complaint herein was filed under the Tort Claims Act, without reference to the admiralty and maritime jurisdiction, the government had a right to file a third-party complaint against Jarka, and to designate it as a Rule 9(h) claim if the claim is in fact within the admiralty and maritime jurisdiction and is an admiralty and maritime claim within the meaning of Rule 9(h).

2. Jarka's second point is: "That the Third-Party Claim here is subject to the Defense of Res Adjudicata, as the issues of unseaworthiness and negligence were decided against this original Plaintiff in its action filed in this court against the United States Lines, Inc., No. 19290 Civil * * *".

This point is likewise without merit. All that was decided in the earlier case was that Benton has no claim against United States Lines based on negligence or unseaworthiness. Neither the government nor Jarka was a party or in privity with a party to that case. Moreover, the government's claim against Jarka is based upon a contractual obligation owed to the government by Jarka, and not upon any claim for contribution or indemnity independent of contract.

B. The government's claim against United States Lines and the vessel is based on the following allegations:

"Plaintiff has alleged that he was struck by a tool dropped into the hold of the SS AMERICAN PACKER. Said tool was dropped pursuant to the careless, reckless and negligent request and direction of employees of Jarka Corporation of Baltimore or crewmen of the SS AMERICAN PACKER or both.

"14. If said tool was dropped because of the negligent request and direction of crewmen of the SS AMERICAN PACKER, third-party defendant United States Lines, Inc., became and is liable to plaintiff, and is liable to indemnify third-party plaintiff United States of America for costs and expenses of defending plaintiff's action and for the full amount of any judgment against the United States.

"15. If said tool was dropped as plaintiff alleges in his complaint, the SS AMERICAN PACKER became and was unseaworthy and is liable to plaintiff, and is liable to indemnify third-party plaintiff United States of America for costs and expenses of defending plaintiff's action and for the full amount of any judgment against the United States."

United States Lines and the vessel moved "to dismiss the action because the third-party complaint fails to state a claim against third-party defendants upon which relief can be granted, or in the alternative to grant summary judgment for third-party defendants under Rule 56, Rules of Civil Procedure, on the ground that the issues of negligence of the third-party defendant, United States Lines, Inc. and of unseaworthiness of S/S AMERICAN PACKER in relation to the injury claimed by the plaintiff in this case have heretofore been resolved by this Court in favor of said third-party defendants, United States Lines, Inc. and S/S AMERICAN PACKER, and therefore there is no genuine issue as to

any material fact." Additional points were raised by both sides in their briefs and at the hearing.

The government argues that "U.S. Lines may be liable to indemnify the United States, if the negligent acts of a U.S. Lines employee result in liability of the United States". Any such liability must be based upon (1) a contractual duty to indemnify, or (2) some duty to indemnify imposed by law apart from contract.

1. No facts sufficient to allege a contractual duty, either express or implied, have been alleged by the government. Leave to amend the third-party complaint within 45 days to allege such facts will be granted.

2. The Restatement, Restitution, § 96, states that "[a] person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability". No facts sufficient to bring that principle into play have been alleged. The government cannot be held liable to Benton unless the government's employee was negligent. If he was negligent, no authority has been cited or found which would impose a duty, apart from contract, on the United States Lines or the vessel to indemnify the government.

Contribution is not claimed and no possible right to contribution would exist if the case is controlled by admiralty and maritime principles, as the government alleges, and not by Maryland law. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952).

The motion of Jarka to dismiss the third-party complaint as against it is hereby denied.

The motion of United States Lines and the vessel to dismiss is hereby granted, with leave to the government to amend its third-party complaint within 45 days from the date of the filing of this memorandum and order.

*Supplemental Opinion*

After the previous opinion filed herein on November 14, 1969, the Government did not amend its third-party complaint, and a final judgment was entered in favor of United States Lines, Inc. and the S.S. American Packer, two of the three third-party defendants.

At the pretrial conference the contract between the Government and Jarka Corporation of Baltimore, the remaining third-party defendant, was authenticated. Under that contract, which was offered in evidence at the recent trial, Jarka agreed to furnish "Stevedoring and Related Terminal Services for the period from 1 October 1965 to 30 September 1967 at Dundalk Marine Terminal, Baltimore, Maryland, as set forth on continuation sheets."[1] The contract contains an express agreement by Jarka to indemnify the Government under certain conditions, set out and discussed later in this opinion. The Government relies on that express agreement in addition to or in place of the alleged implied agreement to indemnify based upon the implied warranty by Jarka to perform stevedoring services in a careful and workmanlike manner, discussed in the previous opinion herein.[2]

At the trial of plaintiff's claim against the Government and the Govern-

---

1. The contract stated that it "relates to the handling of Department of Defense sponsored import or export cargo at Dundalk Marine Terminal, Baltimore, Md. The contractor shall arrange or provide for the furnishing of stevedoring and related terminal services, including materials and equipment incident thereto, as hereinafter set forth. Supplies and services shall be furnished as and when required by the Government, at the direc-

tion of and to the satisfaction of the Contracting Officer, for the consideration stipulated herein."

2. What was said therein with respect to the propriety of designating as a 9(h) claim the Government's third-party claim against Jarka applies to its claim based upon Jarka's express agreement to indemnify as well as to its claim based upon an implied agreement.

ment's third-party claim against Jarka the evidence showed that on February 15, 1967, pursuant to the contract for stevedoring services, and a conference between a Government representative and Jarka the day before, at which a loading plan had been given Jarka, Jarka was loading army cargo onto the S.S. American Packer, of which the Government was a time charterer. Frank Lorenz, a Marine Cargo Specialist, employed by the Government, was on board to see that the cargo was properly stowed and secured; but the physical details of the work were under the control of Jarka's ship foreman and the gang carriers employed by Jarka.

About 5:30 p. m. Jarka had finished loading general cargo into four deep tanks in the No. 2 hold, and had placed the tank tops on the tanks. They were about to load army vehicles on the tank tops and elsewhere on the lower deck in the No. 2 hold, which was about even with the tank tops. When general cargo is in the tanks, it is customary to secure each of the tops with from two to four bolts through openings along the edges of the top of each side of the tanks.[3] It is difficult to get the holes into apposition, and it is customary for the longshoremen to use the pointed end of a spud wrench or a marlin spike to bring the holes into proper alignment to insert the bolts, and then to use a wrench to tighten the nuts on the bolts.

On this occasion Jarka had not brought the necessary tools to do the work and "Rabbit", the gang carrier of the gang working the No. 2 hold, called up to Lorenz, who was on the weather deck, 24 ft. above the lower deck, asking for a wrench. An officer of the ship fetched such a tool,[4] which was more than a foot long and weighed about four pounds.

Lorenz then asked the deckman to find a line with which to lower the tool into the hold. Jarka had no such line available, although a bucket and line are customarily brought aboard and used for various purposes. The deckman and another longshoreman went to look for a suitable line belonging to the ship, but had not found one some 20 minutes after the work in the hold had stopped.

Meanwhile, the stevedoring gang employed by Jarka and the carpenters, including plaintiff, employed by Fidelity Ship Ceiling Co., some 20 men in all, were standing or walking about on the lower deck, doing nothing. When "Rabbit", the Jarka gang carrier, saw Lorenz standing along the side of the hatch on the weather deck, holding the tool, he called to Lorenz to "throw it down onto the dunnage", which filled a 4 to 6 ft. cruciform space between the four tanks. Lorenz, according to his own testimony, "decided" to throw it down. He did so; the tool hit a tank top or a piece of dunnage, bounced up, almost hit a carpenter in the eye, and struck plaintiff's right arm on the ulnar side just above the wrist. Someone on the weather deck had called "stand back", but neither "Rabbit" nor the gang carrier, nor anyone else on the lower deck had given any warning to the men there.

A number of interesting questions have been argued by the parties: (a) Whether this is the kind of situation in which the stevedoring company should ordinarily be held to have made an implied warranty of workmanlike service and to have impliedly agreed to indemnify the Government against any liability imposed on the government arising out of a breach of that warranty;[5] (b) Whether the presence in the contract between the Government and Jarka of an express agreement by Jarka to indemnify the

---

3. The contract between the Government and Jarka provided that if more than four bolts were needed, Jarka would be paid extra compensation.

4. The tool was referred to by one or more of the witnesses as a spud wrench and by one or more as a marlin spike. They are similar tools, except for the opening in the wrench at the round end.

5. See Tebbs v. Baker-Whiteley Towing Co., 271 F.Supp. 529 (D.Md.1967), aff'd 407 F.2d 1055 (4 Cir. 1969), and cases cited therein.

398

Government under certain conditions eliminates any implied agreement to indemnify which would otherwise exist;[6] and (c) Whether the negligent act of the Government employee in tossing the wrench into the hold was such conduct as would bar the Government from recovering under an implied agreement to indemnify.[7]

■ It is not necessary to decide any of those questions in this case, because the Government is clearly entitled to recover under Jarka's express agreement to indemnify the Government.

The essential provisions of the contract dealing with indemnity (GP 20) are:

"(a) the Contractor [Jarka] shall be * * * (iii) responsible for, and hold the Government harmless from, bodily injury and death of persons, occasioned either in whole or in part by the negligence or fault of the contractor, his officers, agents, or employees in the performance of work under this contract * * * subject only to the following specific limitations;

"(b) the Contractor shall not be responsible to the Government for and does not agree to hold the Government harmless from loss or damage to property or bodily injury to or death of persons if:

"(i) the unseaworthiness of the vessel or failure or defect of the gear or equipment furnished by the Government contributed jointly with the fault or negligence of the Contractor in causing such damage, injury or death, and the Contractor, his officers,

agents, and employees, by the exercise of due diligence, could not have discovered such unseaworthiness or defect of gear or equipment, or through the exercise of due diligence could not otherwise have avoided such damage, injury, or death; or

"(ii) the damage, injury or death resulted solely from an act or omission of the Government or its employees or resulted solely from proper compliance by officers, agents, or employees of the Contractor with specific directions of the Contracting Officer. * * * *"

GP 20 further provides for insurance, defense of suits, etc. by the Contractor, Jarka.

Leaving aside Jarka's failure to bring aboard the proper tool to secure the tank top and the customary bucket and line to lower such objects into the hold, as well as the failure of Jarka's employees in the hold and on the deck to offer to carry the tool down into the hold after it had been obtained by the ship's officer, it is quite clear that Jarka's employee, the gang carrier "Rabbit", was negligent in calling to Lorenz to throw the tool down onto the dunnage, and that Lorenz was negligent in deciding to respond to that invitation. The accident was caused by negligence on the part of both Jarka and the Government, not solely from an act or omission of the Government or its employees.

It is not necessary to decide whether Lorenz's negligent act would bar a claim for implied indemnity. See cases in fn.

6. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); the same case on remand, 336 F.2d 124, 127 (9 Cir. 1964), cert. den. 379 U.S. 973, 85 S.Ct. 668, 13 L.Ed.2d 565 (1965); Pettus v. Grace Line, Inc., 305 F.2d 151 (2 Cir. 1962); McCross v. Ratnaker Shipping Co., 265 F.Supp. 827 (D.Md.1967). Cf. D'Agosta v. Royal Netherlands Steamship Co., 301 F.2d 105 (2 Cir. 1962).

7. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376

U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1956); Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Frasca v. S/S Safina E. Ismail, 413 F.2d 259 (4 Cir. 1969); Tebbs v. Baker-Whiteley Towing Co., 271 F.Supp. 529 (D.Md.1967), aff'd 407 F.2d 1055 (4 Cir. 1969); Calmar S. S. Corp. v. Nacirema Operating Co., 266 F.2d 79 (4 Cir. 1959); Williams v. Ocean Transport Lines, Inc., 425 F.2d 1183 (3 Cir. 1970).

7. It was not such an independent, intervening act as would bar recovery under the express agreement, quoted above. "Rabbit's" invitation to Lorenz to throw the wrench down was a continuing invitation, given without warning to the men in the hold to stand back. Jarka is liable to indemnify the government.

Plaintiff, who is now 52 years old, sustained a fracture of the styloid process of the ulna. He was off from work 13½ weeks and lost $1,932 in wages. His medical expenses were $340.-73. He still has to use two hands to drive nails in certain positions, but has been able to do his regular work. He has some trouble lifting, and a minimal amount of pain. He is entitled to $6,500 damages.