Edward R. EVANS, Plaintiff,

v.

J. RAY McDERMOTT, INC., and The Travelers Insurance Company, Defendants.

Civ. A. No. 68–662.

United States District Court,
E. D. Louisiana,
New Orleans Division.

April 22, 1972.

John R. Peters, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for J. Ray McDermott, Inc., and Travelers Ins. Co.

Donald M. Pierce, Organ & Pierce, New Orleans, La., for Triple R. Welding and Oilfield Maintenance Corp.

CASSIBRY, District Judge:

The only issue remaining in this case is whether J. Ray McDermott, Inc., is entitled to indemnity from Triple R. Welding and Oilfield Maintenance Corporation on its third-party claim. The original claim of Edward R. Evans against McDermott for damages for personal injuries has been fully compromised, settled and dismissed. It was stipulated by the parties that the indemnity issue would be submitted to the court for resolution on depositions, medical reports, affidavits and briefs. After consideration of the foregoing, the court hereby makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### 1.

On October 9, 1967, Edward R. Evans was a welder working on the Barge LB101. This vessel was owned or owned *pro hac vice* by J. Ray McDermott, Inc.

### 2.

Triple R. Welding and Oilfield Maintenance Corp., the employer of Evans, was in the business of furnishing labor and services to various companies such as J. Ray McDermott, Inc. Triple R. sent Evans to the barge to perform the specific job of welding a crack or seam in the rake compartment of the barge near the water line.

### 3.

There existed between Triple R. and McDermott a Blanket Subcontractor's Agreement setting forth the terms and conditions of any work to be performed by Triple R. for McDermott. The terms of this agreement were in effect regardless of the location of the services to be performed.[1] Edward R. Evans was furnished pursuant to this agreement.

### 4.

Edward R. Evans was injured while attempting to ascend out of a rectangular hole behind the rake section of the barge. This hole was originally cut by Evans to enable water to be pumped from the bottom of the barge. Ingress and egress was made in the barge by the use of internal bracing members rather than the use of a ladder. The interior of the barge was wet and was lighted only by means of a flashlight which was carried by Evans. The barge supervisor of McDermott, Roy Tastet, had no control over Evans' work other than to point out what needed to be done. Tastet was the only person on the barge other than Evans.

### 5.

Evans, at the time of the injury, was twenty-nine (29) years old and engaged in welding both offshore and inshore. According to the vital statistics of the United States, 1967, the plaintiff had a life expectation of 41.9 years and a work life expectation of 34.2 years. Evans had one of the most aggravated back conditions possible. He started out with a ruptured disc which was operated on. He then developed another herniated disc and a second operation was required. Later, because of pain, Evans had to have a third operation to cut some of the nerves. Evans will have a

---

1. "This Blanket Subcontractor's Agreement sets forth the terms and conditions on which work or services (herein called 'work') will be performed by Subcontractor for McDermott from time to time during the effective period hereof, and the provisions hereof shall apply to all work so performed by Subcontractor, regardless of the location thereof, . . . ."

**1392**

twenty percent (20%) disability of the body as a whole. He will have considerable pain for the rest of his life for which he will have to take both oral and intramuscular pain killing drugs.

**6.**

Triple R. was aware of the settlement negotiations between McDermott and Evans.

**7.**

The contract between the third party plaintiff, McDermott, and third party defendant, Triple R., provides, *inter alia*, that:

". . . Subcontractor agrees to commence and to press with due diligence until completion all work covered hereby, in a good and workmanlike manner with labor, tools, machinery, equipment and supervision necessary or reasonably required therefor, to be furnished by Subcontractor, unless McDermott and Subcontractor agree prior to the commencement of said work, that certain items thereof will be furnished by McDermott or a third party.

\*    \*    \*    \*    \*    \*

"Subcontractor hereby agrees to indemnify and hold harmless McDermott, its employees, officers and agents, against all claims, demands or causes of action based on personal injury or death or property damage or destruction, by all parties whomsoever or whatsoever, including (but without limitation) Subcontractor and its employees, officers and agents, McDermott's employees, officers and agents, and all third parties, arising out of or in any way related to the performance by Subcontractor of any work covered hereby or the failure of Subcontractor to so perform, regardless of whether any such injury or damage or loss is caused by the negligence or fault of Subcontractor or its employees, officers or agents, or of a third party, or an Act of God; the sole and only exclusion from this obligation of indemnity shall be personal injury or death or property damage or destruction · caused wholly, entirely and proximately by the negligence or fault of McDermott or its employees, officers or agents." [2]

## CONCLUSIONS OF LAW

On submission of the case McDermott limited its claim for recovery to implied indemnity for breach of an implied warranty of workmanlike performance. Because of Triple R.'s insurance coverage problems, McDermott chooses not to claim indemnity under the contract and does not seek a judgment for indemnity under the contract. McDermott contends that the unseaworthiness of its barge was caused by Triple R.'s failure to conduct its operations in a workmanlike manner, and that Triple R. breached the implied obligation it had under the law, and notwithstanding the written contract, to conduct its operations in a workmanlike manner.

Triple R. defends against the claim for implied indemnity on three grounds: [3]

1. Evans was McDermott's borrowed servant, and McDermott, therefore, and not Triple R., assumed responsibility for Evans' conduct;

2. McDermott had no obligation to furnish Evans with a seaworthy vessel under Seas Shipping v. Sieracki, 328 U. S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, because Evans was not doing a seaman's work, but was doing "specialized work", and no indemnity is owed under Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133;

3. No theory of recovery exists outside the written contract in this case. The contract expressly provides for Triple R. to perform in a good and workmanlike manner, and the indemnity

---

2. Provisions III and VIII(A) of the Blanket Subcontractor's Agreement.

3. Other grounds urged apply to recovery under the express contract provisions and need not be considered since recovery is not sought under them.

clause fully covers the matter of indemnity between the parties.

### 1.

■ The court finds plaintiff's work on Barge LB101 to be work traditionally done by seamen and that he was owed the warranty of seaworthiness and the duty to provide a safe place to work. Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. Triple R.'s contention that Evans was performing "specialized welding work" beyond that normally done at sea and thus was not doing traditional seaman's work under the holding in Drake v. E. I. DuPont de Nemours & Co., 432 F.2d 276 (5th Cir. 1970) is not valid. The repair work involved in that case required a certified welder and special equipment in connection with magnaflux and X-ray operations not generally available at sea. No comparable circumstances exist here. This was an ordinary welding job involving no major repairs and could not be regarded as "specialized work."

### 2.

■ Third-party plaintiff, J. Ray McDermott & Co., Inc., as the owner, or owner *pro hac vice*, of barge LB101 breached its duty to Edward R. Evans to provide a safe place to work and a seaworthy vessel; Evans' own negligence contributed to his injuries; and Evans' negligence resulted in a breach of the duty of Triple R. to perform in a workmanlike manner. Based upon these findings and the injuries outlined above, the Court also finds that the settlement confected with Edward R. Evans was reasonable under the circumstances.

### 3.

■ Edward R. Evans was not a borrowed servant of McDermott. See Standard Oil v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, and Ruiz v. Shell Oil Company, 413 F.2d 310 (5th Cir. 1969).

### 4.

The action for indemnity under an implied warranty of workmanlike performance cannot be maintained.

The contract between these parties, and under which Evans was furnished, contained an express agreement to perform in a workmanlike manner. Where such an agreement is expressed, it cannot also be implied. " 'Implied' is used in law as contrasted with 'express.' Where the intention in regard to a subject is not manifested by explicit and direct words, it may under appropriate circumstances be 'implied'." Black's Law Dictionary, (de Luxe 4th ed.) p. 888.

■ Likewise, where the parties have contracted on the subject of indemnity with provisions general and comprehensive enough to cover indemnity for breach of the warranty of workmanlike performance, that indemnity is not implied. The express contract provisions in this case are sufficient to control recovery for that indemnity, and the circumstances for implied indemnity are not present. See in this regard D'Agosta v. Royal Netherlands Steamship Co., 301 F.2d 105 (2nd Cir. 1962); Roselli v. Shell Oil Company, 293 F. Supp. 1395 (1968); Benton v. United States, 314 F.Supp. 392 (1970). If the agreement to perform in a workmanlike manner had not been expressed and if the matter of indemnity had not been covered in the indemnity provisions, this would be an appropriate case to imply the warranty of workmanlike performance, and indemnity for its breach. Having been expressed, however, these matters cannot be implied.

### 5.

■ By its argument McDermott in effect contends that there are two indemnities in this case—*contractual* under the contract, and *legal* under admiralty law as delineated by *Ryan*, but a careful reading of *Ryan* shows that the indemnity there was contractual; implied contractual indemnity for the

breach of the implied contractual warranty of workmanlike performance.

As between shipowner and independent contractor there is only one warranty to perform in a good and workmanlike manner. If it is not expressed, it will be implied. Furthermore there is only one obligation to indemnify the shipowner for the breach of that warranty. If the parties do not contract on the matter of indemnity, or if the indemnity provisions of a contract are not sufficiently broad to cover breach of the warranty, the indemnity will be implied.

The cases of Italia Societa, etc. v. Oregon Stevedoring Company, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Pettus v. Grace Line, Inc., 305 F.2d 151 (2nd Cir. 1962); Di Vittorio v. Skiles A/S Siljestad, 244 F.Supp. 48 (S.D.N.Y.1965) relied on by McDermott, when considered in the light of the contractual provisions in this case, do not support its contention, and those cases are not at variance with the views herein expressed.

Accordingly the claim for indemnity is denied and Third-Party Plaintiff's complaint is dismissed.