**Vernon McINNIS et al., Libelants,**

v.

**HAMBURG AMERICAN LINES, a corporation, et al., Respondents.**

**HAMBURG AMERICAN LINES, a corporation, Petitioner,**

v.

**JONES STEVEDORING COMPANY, Respondent-Impleaded.**

No. 29661.

United States District Court, N. D. California.

Feb. 16, 1970.

John L. Burton, Burton & Blumenthal, San Francisco, Cal., for plaintiffs.

John A. Edginton, Graham & James, San Francisco, Cal., for Hamburg American Lines.

Robert C. Taylor, San Francisco, Cal., for Jones Stevedoring Co.

## MEMORANDUM OPINION

WOLLENBERG, District Judge.

### I.

### BACKGROUND

This action was originally brought by a group of longshoremen who fell victims to carbon monoxide poisoning on March 7, 1965, while unloading the M/S Havilland, a vessel owned by defendant Hamburg American Lines ("Shipowner"). The case has been settled as between Shipowner and all but one of the libelants. Shipowner contests its liability as to libelant Domenic Gardetti, asserting that as he was "gang boss" of the longshoremen who were injured, his own negligence in not stopping work or in taking remedial steps when his men complained of insufficient ventilation was either the sole cause of his injury or so contributed to the mishap that his recovery should be reduced by at least 50%. Shipowner has also impleaded the Jones Stevedoring Company, for which the injured longshoremen were working, alleging that the Stevedore has an expressed or, in the alternative, an implied, duty to indemnify the Shipowner when it has breached its implied warranty of workmanlike service. Indemnity is asked under Admiralty Rule 56 for the costs of defending this suit, for monies paid by way of reasonable settlement, and for any damages ultimately awarded libelant Gardetti.

The case having been tried before the Court and all exhibits and evidence having been taken under submission the Court makes the following findings of fact and conclusions of law.

### II.

### THE APPLICABLE LAW

 The liability of a shipowner for failure to provide a seaworthy vessel or a safe place in which to work extends not only to seamen but also to longshoremen injured while doing ship's work. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This liability may be concurrent with that of a stevedoring company even in cases where the alleged negligence or unseaworthiness could only have been the result of the stevedore's breach of his implied warranty that unloading operations would be performed in a workmanlike manner. Johnson v. Partrederiet Brovigtank, D.C., 202 F.Supp. 859 (1962). Judith Ann Liberian Transport Corp. v. Crawford, 9 Cir., 399 F.2d 924 (1968). Similarly the liability of the shipowner will extend even to a longshoreman whose own negligence brought an unseaworthy condition into play. The contributory negligence of the libelant longshoreman will, of course, reduce his recovery. Grillea v. United States, 2 Cir., 232 F.2d 919 (1956); Misurella v. Isthmian Lines, Inc., D.C., 215 F.Supp. 857 (1963); aff'd 2 Cir., 328 F.2d 40 (1964).

██ ██ In cases where the Shipowner's liability results from the stevedoring company's own breach of its implied warranty of workmanlike service, the shipowner may be entitled to full indemnity for losses arising from the breach. It is assumed that the stevedore enjoys a special expertise with regard to unloading and loading operations, and even with regard to unseaworthy conditions which will often be present on a ship which has completed a long voyage. Hugev v. Dampskisaktieselskabet International, D.C., 170 F.Supp. 601 (1959). The stevedore, of course, is also the party most in contact with many cargo operations, and most likely to have notice of unsafe conditions arising in connection with such operations. One such unsafe condition is improperly ventilated holds in which longshoremen may be forced to work in conjunction with carbon monoxide emitting machinery. Albanese v. N. V. Nederl. Amerik Stoom Maats., 2 Cir., 392 F.2d 763 (1968); *Misurella, cit. supra*. The stevedore is obliged to test the atmosphere in such holds at regular intervals, to provide its own ventilation equipment if the ship's own system is inadequate or inoperative, and may even be obligated to stop work in the

face of a dangerous atmospheric condition. A breach of these obligations will give rise to a duty to indemnify unless it be shown that the shipowner violated his own implied contractual duty not to materially hinder, delay, or interfere with the stevedore's efforts to provide workmanlike service. *Hugev, cit. supra.*

## III.

### FINDINGS OF FACT

Plaintiff was injured while acting as "gang boss" of longshoremen engaged in unloading cargo from the No. 1 lower hold. It was necessary to make use of a forklift for this job; the lift emitted considerable quantities of carbon monoxide. Accordingly the ship's cargo officer, Mr. Klaus Sander, was asked, at about 10:00 a. m. on the day in question, to turn on the ship's blowers. By common understanding and ship's custom, such a request would encompass all elements of the ship's ventilation system, including not only the vessel's recirculating blowers, but also its fresh air intake and its exhaust blowers. At 11:00 a. m., an atmospheric test was taken by "walking boss" John Vasquez, an employee of Stevedore. This test indicated that the level of carbon monoxide in the hold was 25 parts per million ("ppm"), a level consistent with worker safety. The "MSA" testing device which was utilized was accurate to within normal variances for such devices.

■ The next atmospheric test was not taken until after several longshoremen had collapsed from carbon monoxide poisoning. This test, taken sometime after 2:00 p. m., indicated that there were at that time some 50 ppm of the deadly gas in the No. 1 lower hold. Doctors' testimony, however, makes it clear that sometime between 11:00 a. m. and 2:00 p. m. the carbon monoxide level in the hold was far beyond minimum standards of human safety, that this condition in the lower hold rendered the vessel herein unseaworthy, and that this unseaworthy condition resulted in the carbon monoxide poisoning by which the longshoremen were seriously injured. Libelant is entitled to recover from Shipowner those of his losses which are attributable to this unseaworthiness of the M/S Havilland.

■ The Court finds plaintiff's damages to have been as follows: $101.50, special damages; $500.00, general damages. This total ($601.50) must, however be reduced by an amount equivalent to the degree to which plaintiff's own negligence, if any contributed to the unseaworthy condition which gave rise to the accident herein.

It appears from the evidence that the ship's recirculating blowers were on, but that the fresh air-exhaust ventilation system was off, during the period immediately preceding the accident. It also appears that libelant Gardetti received "constant complaints" from his men about "bad air" both preceding and following his cursory 1:00 check of the hold. It is the Shipowner's contention, which the Court accepts, that Gardetti, as a gang boss responsible in large degree for the safety of the conditions in which his men worked, should have taken more precautionary measures than he actually did on the day of the accident.

Libelant Gardetti was not present in the hold between about 11:00 a. m. and the time his men took off for lunch. Upon hearing the mens' complaints, he did not order an atmospheric test, a test which would seem all the more necessary in light of the fact that he had been absent during the period when his men claimed the air had been getting "bad". He did check the ventilation of the hold at 1:00 a. m., but assumed, on seeing "the blowers on", that all was in proper order. This assumption was unwarranted. The use of recirculating blowers as a part of a total ventilation system is not uncommon aboard ships of this class, and common sense as well as applicable regulations indicate that the fact that these blowers are on is not enough to ensure that fresh air is being introduced, and foul air emitted, from a ship's hold. Finally, the fact that complaints continued after the 1:00 check

should have indicated to Gardetti that the conditions complained of had not abated.

Thus Gardetti himself was negligent. This negligence contributed to the unseaworthy condition which gave rise to the accident in question. However, it was not the sole cause of the accident in that it appears that supervisory authority over the No. 1 lower hold was divided between Gardetti, the walking boss, Mr. Vasquez, and the superintendent, Mr. Green; and that Vasquez, at least, had reason to know that atmospheric conditions in the hold were not all they should have been.

Accordingly, the Court finds libelant Gardetti's own negligence to have been 50% of the cause of the accident which gave rise to his losses. His total award will therefore be $300.75, plus costs of suit.

■ Shipowner claims indemnity from Stevedore under the terms, both expressed and implied, of the contract signed by both parties, which contract establishes Stevedore's duty to indemnify for accidents arising from its work, unless such accident is the "sole fault of the vessel, its crew, or equipment".

In view of the Court's finding that the negligence of libelant Gardetti, an employee of Stevedore, contributed to the accident herein, it cannot be said that any conduct of shipowner was the "sole cause" of the accident. Stevedore cannot, therefore, escape its duty to indemnify on the basis of the express exception to its general responsibility under the above quoted contract. Stevedore does maintain, however, that Shipowner's conduct was such as to prevent, preclude, or seriously hinder the performance of a workmanlike job by Stevedore. A suggestion is made that the cargo officer, Mr. Sander, at about 1:00 p. m., chose not to activate the exhaust and fresh air entry elements of the ventilation system, in view of the fact that their operation might result in frost forming on the refrigeration coils in parts of the ship's hold. The Court finds this allegation unsupported by the evidence. The more logical explanation is that given by Mr. Sander, i. e., that around 11:30 a. m. some of the men working in the hold asked that the blowers be turned off, saying that they would install the stevedore company's own portable ventilation machinery. It is uncontroverted that the stevedores' immediate supervisor, Mr. Gardetti was absent at this time. It is also clear that the first complaints of bad air were made a short time thereafter. These facts, and the fact that the test by Vasquez at 11:00 had found no dangerous amounts of carbon monoxide in the air, though the men had been working in the hold since 10:00, indicate that the build-up of the deadly poison occurred due to a deactivation of part of the ship's ventilation system at about 11:30 a. m. The Court therefore finds no effort by ship's personnel to prevent, preclude, or seriously hinder, efforts by Stevedore to provide safe working conditions for its men. The Court does find negligence on the part of Stevedore's employees, particularly libelant Gardetti and walking boss Vasquez. Both men had notice that something was amiss; neither took appropriate action until it was too late. Their inaction constituted a breach of Stevedore's implied warranty of workmanlike performance.

Accordingly, the Court finds that Jones Stevedoring Company must indemnify Hamburg American Lines for moneys recovered by libelant Gardetti in the suit herein, by the other longshoremen by way of reasonable settlement, and also for Hamburg's costs in defending this suit.

This memorandum of decision shall constitute findings of fact and conclusions of law under Rule 52(a), Federal Rules of Civil Procedure. Each plaintiff will prepare forms of judgment in accord with this opinion.