ITALIA SOCIETA PER AZIONI DI NAVIGAZIONE *v.*
OREGON STEVEDORING CO., INC.

No. 82. Argued January 8, 1964.—Decided March 9, 1964.

*Erskine B. Wood* argued the cause for petitioner. With
him on the brief was *Erskine Wood.*

*Floyd A. Fredrickson* argued the cause for respondent.
With him on the brief was *Alfred A. Hampson.*

Briefs of *amici curiae,* urging reversal, were filed by
*Solicitor General Cox, Assistant Attorney General Doug-
las* and *Sherman L. Cohn* for the United States, and by
*J. Ward O'Neill, Charles B. Howard, Scott H. Elder* and
*J. Stewart Harrison* for the American Merchant Marine
Institute, Inc., et al.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an action by a shipowner, Italia Societa per
Azioni di Navigazione (Italia), against a contracting
stevedore company, Oregon Stevedoring Company (Ore-
gon), to recover indemnity for breach of the stevedore's
implied warranty of workmanlike service. The issue
presented is whether the warranty is breached where the

stevedore has nonnegligently supplied defective equipment which injures one of its employees during the course of stevedoring operations.

## I.

The petitioner, Italia, is the owner of the vessel M. S. *Antonio Pacinotti.* The respondent, Oregon, agreed to render stevedoring services for Italia in all ports along the Columbia and Willamette Rivers. Under the contract between the companies Oregon was to have exclusive rights to and control over the loading and discharge of cargoes aboard Italia's vessels [1] and was to "furnish all necessary labor and supervision and all ordinary gear for the performance of [these] services . . . , including winch drivers and usual appliances used for stevedoring." Italia was to furnish and maintain in safe and efficient working condition suitable booms, winches, blocks, steam, lights and so forth. The agreement provided that the stevedoring company would be responsible for damage to the ship, cargo, and for injury or death of any person caused by its negligence, and that the steamship company would be responsible for the injury or death of any person or damage to property arising from its negligence or by reason of failure of the ship's gear and equipment.[2]

---

[1] The contract reads:

"It is mutually agreed between the parties hereto, that the Stevedoring Company will act as stevedores, and that they will with all possible dispatch, load and/or discharge all cargoes of vessels owned, chartered, controlled, or managed by the Steamship Company at all Columbia and Willamette River ports as directed. And it is agreed that the Steamship Company will grant to the said Stevedoring Company the exclusive rights of handling all such cargoes as before mentioned under the terms of this agreement . . . ."

[2] Paragraph VIII of the agreement states:

"The Stevedoring Company will be responsible for damage to the ship and its equipment, and for damage to cargo or loss of cargo over-

During the course of Oregon's stevedoring operations in Portland, one of its longshoreman employees, Griffith, was injured on the M. S. *Antonio Pacinotti* when a tent rope snapped. The rope, permanently attached to a hatch tent used to protect cargo from rain, was furnished by Oregon pursuant to its obligation to supply ordinary gear necessary for the performance of stevedoring services. The injured longshoreman sued the shipowner in a state court for negligence and unseaworthiness [3] and recovered a judgment against Italia upon a general verdict. Italia satisfied the judgment and thereupon brought this suit in a Federal District Court for indemnity from Oregon. The District Court found that the basis for Griffith's recovery was not negligence on the part of the shipowner but a condition of unseaworthiness created by the rope supplied by Oregon, which was found defective and unfit for its intended use. However, the District Court disallowed indemnity because Italia had

---

side, and for injury to or death of any person caused by its negligence, provided, however, when such damage occurs to the ship or its equipment, or where such damage or loss occurs to cargo, the ship's officers or other authorized representatives call the same to the attention of the Stevedoring Company at the time of occurrence. The Steamship Company shall be responsible for injury to or death of any person or for any damage to or loss of property arising through the negligence of the Steamship Company or any of its agents or employees, or by reason of the failure of ship's gear and/or equipment."

[3] The shipowner is liable for unseaworthiness, regardless of negligence, whenever the ship or its gear is not reasonably fit for the purpose for which it was intended and this liability extends to longshoremen and others who work aboard the vessel, including those in the employ of contracting stevedore companies. *Seas Shipping Co.* v. *Sieracki*, 328 U. S. 85; *Pope & Talbot* v. *Hawn*, 346 U. S. 406; *Mitchell* v. *Trawler Racer*, 362 U. S. 539. If the owner engages others who supply the equipment necessary for stevedoring operations, he must still answer to the longshoreman if the gear proves to be unseaworthy. *Alaska S. S. Co.* v. *Petterson*, 347 U. S. 396. This liability is strict and nondelegable. *Mitchell* v. *Trawler Racer, supra; Mahnich* v. *Southern S. S. Co.*, 321 U. S. 96.

failed to prove negligence on the part of the stevedore company, since the defective condition of the rope was not apparent. That court viewed the contractual provision rendering Oregon liable for injuries caused by its negligence as an express disclaimer against an implied warranty of workmanlike service. The Court of Appeals for the Ninth Circuit with one judge dissenting, affirmed, but solely on the ground that a stevedore's implied warranty of workmanlike service is not breached in the absence of a showing of negligence in supplying defective equipment. 310 F. 2d 481. Because of a conflict between this decision and the decision of the Court of Appeals for the Second Circuit in *Booth S. S. Co.* v. *Meier & Oelhaf Co.*, 262 F. 2d 310, and the importance of the question involved, we granted certiorari. 372 U. S. 963. For the reasons stated below, we have determined that the absence of negligence on the part of a stevedore who furnishes defective equipment is not fatal to the shipowner's claim of indemnity based on the stevedore's implied warranty of workmanlike service.

In *Ryan* v. *Pan-Atlantic Corp.*, 350 U. S. 124, the landmark decision in this area, it was established that a stevedoring contractor who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's improper stowage of cargo. Although the agreement between the shipowner and stevedore was silent on the subject of warranties and standards of performance, the Court found that the essence of the stevedore's contract is to perform "properly and safely." "Competency and safety . . . are inescapable elements of the service undertaken." This undertaking is the stevedore's "warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product," 350 U. S., at 133–134, a warranty generally deemed to cover defects not attributable to a manufac-

turer's negligence.[4] See also *Crumady* v. *The J. H. Fisser,* 358 U. S. 423, 428–429.

The Court further distinguished in *Ryan* between contract and tort actions, stating that the shipowner's suit for indemnification was not changed "from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service," 350 U. S., at 134, and pointedly declined to characterize the stevedore's conduct as negligent, notwithstanding that discussion in the opinion below centered on concepts of active and passive negligence on the part of the shipowner and stevedore.[5] Although in *Ryan* the stevedore was negligent, he was not found liable for negligence as such but because he failed to perform safely, a basis for liability including negligent and nonnegligent conduct alike.

Subsequent decisions have made clear that the stevedore's obligation to perform with reasonable safety extends not only to the stowage and handling of cargo

---

[4] *George* v. *Willman,* 379 P. 2d 103 (Alaska); *Hessler* v. *Hillwood Mfg. Co.,* 302 F. 2d 61 (C. A. 6th Cir.); *Green* v. *American Tobacco Co.,* 154 So. 2d 169 (Fla.); *Henningsen* v. *Bloomfield Motors,* 32 N. J. 358, 161 A. 2d 69. See Frumer and Friedman, Products Liability, § 10.01, and cases cited therein; Uniform Sales Act, Uniform Laws Annotated (1950 ed.), § 15 (1); Uniform Commercial Code, Uniform Laws Annotated (1962 ed.), § 2–315. See generally Williston, Sales, § 237 (Rev. ed. 1948 and Supp. 1963).

[5] *Palazzolo* v. *Pan-Atlantic S. S. Corp.,* 211 F. 2d 277 (C. A. 2d Cir.):

"Judgment on the action for indemnity over was awarded to Ryan. We think this error. The trial judge found Pan-Atlantic guilty of negligence in that its 'cargo officer did not properly perform his admitted duty to supervise the safe and careful loading of the vessel.' However, Ryan created the hazardous condition by its improper stowage of the pulp paper rolls at Georgetown. We think the improper stowage the primary and active cause of the accident. Under our holdings . . . indemnity over is recoverable where, as here, the employer's negligence was the 'sole' 'active' or 'primary' cause of the accident." *Id.,* at 279.

but also to the use of equipment incidental thereto, *Weyerhaeuser S. S. Co.* v. *Nacirema Operating Co.*, 355 U. S. 563, including defective equipment supplied by the shipowner, *Crumady* v. *The J. H. Fisser, supra,* cf. *Waterman S. S. Corp.* v. *Dugan & McNamara, Inc.*, 364 U. S. 421, and that the shipowner's negligence is not fatal to recovery against the stevedore. "[I]n the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." *Weyerhaeuser, supra,* at 569. And last Term in *Reed* v. *The Yaka*, 373 U. S. 410, we assumed, without deciding, that a shipowner could recover over from a stevedore for breach of warranty even though the injury-causing defect was latent and the stevedore without fault. We think that the stevedore's implied warranty of workmanlike performance applied in these cases is sufficiently broad to include the respondent's failure to furnish safe equipment pursuant to its contract with the shipowner, notwithstanding that the stevedore would not be liable in tort for its conduct.[6]

Oregon argues, however, that the imposition in *Ryan* of liability on the stevedore in warranty rather than tort was necessitated by the Court's previous decision in *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.*, 342 U. S. 282, which held that maritime principles of contribution between joint tortfeasors prevailing in collision cases were not applicable in suits for contribution by a shipowner against stevedore companies. It further

---

[6] If the stevedore is liable in warranty for supplying defective, injury-producing equipment, of course the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U. S. C. §§ 901–950, are no bar to recovery. This question was fully resolved in *Ryan* v. *Pan-Atlantic Corp., supra,* at 130: "The Act nowhere expressly excludes or limits a shipowner's right, as a third person, to insure itself against such a liability either by a bond of indemnity, or the contractor's own agreement to save the shipowner harmless." See also *Reed* v. *The Yaka, supra.*

urges that negligence on the part of the stevedore company or its employees was present in all the above cases, and that the Court characterized the warranty in post-*Ryan* decisions as one entailing an obligation to perform with reasonable safety and reasonable competency. However, the stevedore's obligation established in *Ryan* was not merely an escape from the no-recovery consequences of *Halcyon,* as is evidenced by the fact that recovery of contribution between joint tortfeasors and recovery of indemnity for breach of warranty proceed on two wholly distinct theories and produce disparate results.[7] See *American Stevedores* v. *Porello,* 330 U. S. 446. Recovery in contribution is imposed by law and is measured by the relative fault of the joint tortfeasors or shared equally between them, *The North Star,* 106 U. S. 17; *The Max Morris,* 137 U. S. 1; *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp., supra;* while recovery in indemnity for breach of the stevedore's warranty is based upon an agreement between the shipowner and stevedore and is not necessarily affected or defeated by the shipowner's negligence, whether active or passive, primary or secondary. *Weyerhaeuser S. S. Co.* v. *Nacirema Operating Co., supra.* And the description of the stevedore's obligation as one of performance with reasonable safety is not a reference to the reasonable-man test pertaining to negligence, but a delineation of the scope of the stevedore's implied contractual duties. The implied warranty to supply reasonably safe equipment may be satisfied with less than absolutely perfect equipment;[8] however, the

---

[7] See *Crawford* v. *Pope & Talbot, Inc.,* 206 F. 2d 784 (C. A. 3d Cir.); *Rich* v. *United States,* 177 F. 2d 688 (C. A. 2d Cir.); *McFall* v. *Compagnie Maritime Belge, S. A.,* 304 N. Y. 314, 107 N. E. 2d 463. See generally Weinstock, The Employer's Duty to Indemnify Shipowners For Damages Recovered By Harbor Workers, 103 U. of Pa. L. Rev. 321 (1954).

[8] Cf. *Calderola* v. *Cunard S. S. Co.,* 279 F. 2d 475 (C. A. 2d Cir.); *Orlando* v. *Prudential S. S. Corp.,* 313 F. 2d 822 (C. A. 2d Cir.).

issue of breach of the undertaking does not turn on whether the contractor knew or should have known that his equipment was safe, but on whether the equipment was in fact safe and fit for its intended use. As the Court has aptly said with respect to the shipowner's duty to furnish a seaworthy vessel, a duty which is imposed by law:

> "What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection, but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service." *Mitchell* v. *Trawler Racer, Inc.*, 362 U. S. 539, 550.

We do not believe a rope designed to withstand three to five times the pressure exerted on it when it gave way satisfies the standard of reasonable safety. And the District Court specifically found that the rope was unfit for the purpose for which it was intended and that the injury to Griffith was the natural consequence of its breakage.

Oregon, a specialist in stevedoring, was hired to load and unload the petitioner's vessels and to supply the ordinary equipment necessary for these operations. The defective rope which created the condition of unseaworthiness on the vessel and rendered the shipowner liable to the stevedore's employee was supplied by Oregon, and the stevedoring operations in the course of which the longshoreman was injured were in the hands of the employees of Oregon. Not only did the agreement between the shipowner place control of the operations on the stevedore company, but Oregon was also charged under the contract with the supervision of these operations. Although none of these factors affect the ship-

owner's primary liability to the injured employee of Oregon, since its duty to supply a seaworthy vessel is strict and nondelegable, and extends to those who perform the unloading and loading portion of the ship's work, *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, cf. *Pope & Talbot* v. *Hawn,* 346 U. S. 406, they demonstrate that Oregon was in a far better position than the shipowner to avoid the accident. The shipowner defers to the qualification of the stevedoring contractor in the selection and use of equipment and relies on the competency of the stevedore company.[9]

True the defect here was latent and the stevedore free of negligent conduct in supplying the rope. But latent defects may be attributable to improper manufacture or fatigue due to long use and may be discoverable by subjecting the equipment to appropriate tests. Further the stevedore company which brings its gear on board knows the history of its prior use and is in a position to establish retirement schedules and periodic retests so as to discover defects and thereby insure safety of operations. See *Booth S. S. Co.* v. *Meier & Oelhaf Co., supra.* It is considerations such as these that underlie a manufacturer's or seller's obligation to supply products free of defects and a shipowner's obligation to furnish a seaworthy vessel.[10] They also serve to render a tort standard of negli-

---

[9] *Seas Shipping Co.* v. *Sieracki, supra,* at 100. *Hugev* v. *Dampskisaktieselskabet Int'l,* 170 F. Supp. 601, 609–611, aff'd *sub nom. Metropolitan Stevedore Co.* v. *Dampskisaktieselskabet Int'l,* 274 F. 2d 875 (C. A. 9th Cir.), cert. denied, 363 U. S. 803; *Revel* v. *American Export Lines,* 162 F. Supp. 279, 286–287, aff'd, 266 F. 2d 82 (C. A. 4th Cir.).

[10] "The function of the doctrine of unseaworthiness and the corollary doctrine of indemnification is allocation of the losses caused by shipboard injuries to the enterprise, and within the several segments of the enterprise, to the institution or institutions most able to minimize the particular risk involved." *DeGioia* v. *United States Lines,* 304 F. 2d 421, 426 (C. A. 2d Cir.). And see *Ferrigno* v. *Ocean Transport Ltd.,* 309 F. 2d 445 (C. A. 2d Cir.).

gence inapplicable to the stevedore's liability under its warranty of workmanlike service. For they illustrate that liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury. Where, as here, injury-producing and defective equipment is under the supervision and control of the stevedore, the shipowner is powerless to minimize the risk; the stevedore is not.

Where the shipowner is liable to the employees of the stevedore company as well as its employees for failing to supply a vessel and equipment free of defects, regardless of negligence, we do not think it unfair or unwise to require the stevedore to indemnify the shipowner for damages sustained as a result of injury-producing defective equipment supplied by a stevedore in furtherance of its contractual obligations. See *Alaska S. S. Co.* v. *Petterson,* 347 U. S. 396, 401 (dissenting opinion).

Both sides press upon us their interpretation of the law in regard to the scope of warranties in nonsales contracts, such as contracts of bailment and service agreements. But we deal here with a suit for indemnification based upon a maritime contract, governed by federal law, *American Stevedores, Inc.,* v. *Porello, supra,* in an area where rather special rules governing the obligations and liability of shipowners prevail, rules that are designed to minimize the hazards encountered by seamen, to compensate seamen for the accidents that inevitably occur, and to minimize the likelihood of such accidents. By placing the burden ultimately on the company whose default caused the injury, *Reed* v. *The Yaka,* 373 U. S. 410, 414, we think our decision today is in furtherance of these objectives.

## II.

The District Court declined to pass on the issue decided above since it found that the implied warranty of workmanlike performance was negated by the provision in

the agreement rendering Oregon liable for personal injuries resulting from its negligence. The Court of Appeals declined to pass on the latter question, its finding that the warranty did not extend to nonnegligent conduct rendering a resolution of it unnecessary. The effect of the express assumption of liability for negligence provision in the contract on the existence of the implied warranty has not been briefed or argued in this Court. Accordingly, the issue remains for the Court of Appeals to decide. The judgment below is reversed and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join, dissenting.

Today's decision is commanded neither by *Ryan Stevedoring Co.* v. *Pan-Atlantic S. S. Corp.,* 350 U. S. 124, and its progeny, nor by the general law of warranty. In *Halcyon Lines* v. *Haenn Ship Ceiling & Refitting Corp.,* 342 U. S. 282, and *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406, we held that the system of compensation which Congress established in the Longshoremen's and Harbor Workers' Compensation Act[1] as the sole liability of a stevedoring company to its employees prevented a shipowner from shifting all or part of his liability to the injured longshoreman onto the stevedoring company, the longshoreman's employer. *Ryan* held no more than that the shipowner could recover over from the stevedoring company, by invoking the legal formula of warranty, where there had been a finding that the stevedoring company had been negligent.[2] In the present case there is

---

[1] 44 Stat. 1424, as amended, 33 U. S. C. §§ 901–950.

[2] *Reed* v. *The Yaka,* 373 U. S. 410, held only that a longshoreman could bring a suit for unseaworthiness against a stevedoring company which chartered a ship and was the longshoreman's employer. In that case no issue as to an implied warranty of workmanlike service

an express finding that the stevedoring company was not negligent.

Moreover, the Court here expands the general law of warranty in a way which I fear will cause us regret in future cases in other areas of the law as well as in admiralty. There is no basis in past decisions of this or any other court for the holding that one who undertakes to do a job for another and is not negligent in any respect nevertheless has an insurer's absolute liability to indemnify for liability to injured workers which the party who hired the job done may incur.

Finally, the contract under which the parties dealt here provided that the stevedoring company was to be liable for personal injuries resulting from its negligence, while the shipowner was to be liable for injury caused by its own negligence "or by reason of the failure of ship's gear and/or equipment." This provision appears on its face to put the burden of liability for unseaworthiness, which was the basis of the worker's recovery here, on the shipowner, leaving negligence as the only basis on which the stevedoring company could be held liable. The District Court so held. The contract is before us, and we are as competent to interpret it now, without remanding to the Court of Appeals, as we are to invoke "policy" reasons in order to expand *Ryan* and impose new financial burdens on stevedoring companies in plain violation of the policy Congress adopted in the Longshoremen's and Harbor Workers' Compensation Act.

For these and other reasons cogently expressed in Judge Hamlin's opinion for the Court of Appeals, 310 F. 2d 481, I dissent.

---

arose because the stevedoring company had agreed in any case to hold the shipowner harmless without regard to negligence, see 183 F. Supp. 69, 70; furthermore, the stevedoring company there was also the operator of the vessel, and therefore in that particular case was primarily liable for unseaworthiness.