JUDITH ANN LIBERIAN TRANSPORT
CORPORATION, Ltd., a foreign
corporation, Appellant,

v.

Wayne CRAWFORD and Brady-Hamilton
Stevedore Company, a corpo-
ration, Appellees.

No. 22184.

United States Court of Appeals
Ninth Circuit.

Sept. 6, 1968.

Curtis W. Cutsforth (argued), of
King, Miller, Anderson, Nash & Yerke,
Portland, Or., for appellant.

Raymond J. Conboy (argued), of
Pozzi, Levin & Wilson, Nathan J. Heath,

(argued), of Gray, Fredrickson & Heath, Portland, Or., for appellees.

Before HAMLIN and MERRILL, Circuit Judges, and CROCKER, District Judge.

MERRILL, Circuit Judge:

Appellee Crawford, a longshoreman, brought suit in the District Court for the District of Oregon for injuries sustained while engaged in unloading the freighter, JUDITH ANN, allegedly cause by the unseaworthy condition of the ship. Suit was brought against appellant, the ship's owner, with jurisdiction founded on diversity of citizenship. Appellant impleaded appellee Brady-Hamilton Stevedore Company, Crawford's employer, asserting a right to indemnity. A jury trial resulted in a verdict against the shipowner in favor of Crawford and also against the shipowner on its claim of indemnity against Brady-Hamilton. The shipowner appeals from judgment in both respects.

Crawford was a member of a longshoreman gang engaged in unloading bundles of 20-foot bars of reinforcing steel (known as "rebar") from the hold of the JUDITH ANN. The bundles were resting on dunnage less than one inch in thickness. This did not allow sufficient space between and under bundles for use of the regular cargo sling. The stevedore resorted to use of a pick-up sling to raise one end of the bundles in order that the cargo sling might then be brought under and around them. During the course of this operation one load slipped out of the pick-up sling and landed on a piece of dunnage which flew up and struck Crawford, inflicting serious injuries.

Pick-up slings are of two types: the cradle sling (which was the type here used), and the choker sling, which, by gripping the load, exerts friction and lessens the possibility of slipping.

Crawford specified unseaworthiness in two respects:

1. That the cargo was not properly stowed in that inadequate dunnage was used requiring resort to a pick-up sling, which, in the case of flexible bundles of rebar, is unduly hazardous.

2. That a choker rather than a cradle sling should have been used.

While the record contains ample testimony to support a verdict of unseaworthiness in either respect, there was testimony to the contrary: that the stow was in accordance with custom and that this customary stowage was generally regarded as safe; that resort to a pick-up sling is an everyday occurrence and is not considered hazardous; that a cradle sling is the only type that can be used on rebar bundles since the sling has to be worked down the bundle from the end for a distance before the end of the bundle can safely be raised and that the grip of the choker prevents this.

### Appeal against Crawford

Appellant asserts as error the giving of certain instructions and failure to give proposed instructions. In no respect do we find prejudicial error or the likelihood of confusion. Judgment in favor of Crawford is affirmed.

### Appeal against Brady-Hamilton

Appellant contends that as matter of law it was entitled to a directed verdict against Brady-Hamilton. Referring to Crawford's two specifications of unseaworthiness it contends:

On the one hand, if the unseaworthy condition was caused by the use of an improper sling, Brady-Hamilton is absolutely liable for having created the unseaworthy condition since the cradle sling was its choice.

On the other hand, if the ship was rendered unseaworthy by an improper stow, Brady-Hamilton clearly had knowledge of that fact and under established law was under a duty to halt all further work until the unsafe condition had been remedied; that proceeding with unloading under these circumstances, as matter of law, amounted to a substandard performance.

Brady-Hamilton disputes both of these alternative contentions.

We defer discussion of the first alternative contention until later in the opinion. As to the second alternative, Brady-Hamilton argues that continuing to unload in the face of a known danger does not in and of itself establish liability as matter of law. The question, it contends, is whether such conduct was unreasonable under the circumstances. We agree.

The question is as to the standards by which the stevedore's conduct is to be judged when it brings into play an unseaworthy condition for which it was not itself responsible.

Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), establishes that negligence of a stevedore which brings an unseaworthy condition into play amounts to a breach of the stevedore's warranty. To the same effect is Rederi A/B Nordstjernan, v. Crescent Wharf and Warehouse Co., 372 F.2d 674 (9th Cir. 1967). However, if negligence is lacking and the performance of the stevedore is workmanlike, we fail to see any basis upon which a breach of warranty can be asserted.

The question remains whether proceeding to unload in the face of a known hazard constitutes a lack of workmanlike performance. Many cases lay down the rule that once a defective or unseaworthy condition is discovered the stevedore must discontinue work until the condition is remedied. These cases, however, appear to deal either with conditions that could be remedied or with a lack of workmanlike performance in the effort to avoid or remedy the condition.[1]

Here the hazard presented by the unsafe stow could not be remedied. Unless the cargo was permanently to be left in the ship, the alternatives faced by this (or any other) stevedore were to leave it for the ship's crew to unload or to unload it in the face of the hazard, taking all due precautions. The first alternative we must reject. The special rules governing shipowner liability and indemnification "are designed to minimize the hazards encountered by seamen * * * and to minimize the likelihood of such accidents." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964). Stevedores are the acknowledged experts in this field. It would hardly serve to minimize accidents to require that they be replaced by inexperienced crew members in all cases where the circumstances are known to be irremediably hazardous.

The question, then, is whether the stevedore in workmanlike fashion attacked the problem presented by the known unseaworthy condition. This cannot be answered as matter of law and remains a question for the jury. It was not error, therefore, to deny the shipowner's motion for directed verdict.

Throughout the case appellant has consistently contended that if the stow itself was seaworthy and if unseaworthiness was due solely to the use of a cradle sling rather than a choker sling it was, as matter of law, entitled to indemnity. Upon this point we agree with appellant.

In disputing this contention Brady-Hamilton asserts that it is not liable unless, in performing its work, it was unskilled, unworkmanlike or negligent; that it is not liable for making a wrong choice of sling (even though that choice rendered the ship unseaworthy) unless it was somehow at fault in making the choice.

The law is to the contrary. Assuming the unseaworthy condition to be due

---

1. Conditions that could be remedied were present in Crescent Wharf & Warehouse v. Compania Naviera de Baja California, 366 F.2d 714 (9th Cir. 1966); Matson Terminals, Inc. v. Caldwell, 354 F.2d 681 (9th Cir. 1965); Metropolitan Stevedore Co. v. Dampskisaktieselskabet Int'l, 274 F.2d 875 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1960). Negligence was admitted by the stevedore in Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co., 372 F.2d 674 (9th Cir. 1967).

solely to the use of a cradle sling, we are not dealing with an unseaworthy condition created by another and brought into play by the stevedore. We deal rather with an unseaworthy condition created by the stevedore. The test of liability differs in the two cases. In the latter case fault (other than in the creation of the unseaworthy condition) is not necessary. The very creation of the condition constitutes a breach of the stevedore's warranty.

In Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the Court, in holding for liability without negligence, described the stevedore's warranty as comparable to that of a manufacturer. Liability is not based on negligence but is due to the fact that the stevedore "failed to perform safely, a basis for liability including negligent and non-negligent conduct alike." 376 U.S. at 319, 84 S.Ct. 751.

Brady-Hamilton seeks to distinguish that case upon the ground that it dealt with defective rope while here there was no defect in the sling. We find no merit in the distinction. The question is whether the sling was fit for the task to which it was put. In Seattle Stevedore Co. v. Compania Maritima, 373 F.2d 9 (9th Cir. 1967), this court held negligence to be irrelevant where the unseaworthiness was due to the manner in which the stevedore had stowed cargo. To the same general effect is Mosley v. Cia. Mar. Adra S.A., 362 F.2d 118 (2d Cir.), cert. denied Lipsett Steel Products, Inc. v. Mosley, 385 U.S. 933, 87 S.Ct. 292, 17 L.Ed.2d 213 (1966).

■ Appellant complains that it has been deprived of the benefit of this rule. First it points out that the manner in which the case was given to the jury made it impossible to ascertain the basis upon which the jury found the ship to be unseaworthy. Appellant sought to have the jury return a special verdict upon the question and the court denied its motion. This is assigned as error. The law is clear, however, that resort to special verdict is a matter for the discretion of the trial court. Pope & Talbot, Inc. v. Cordray, 258 F.2d 214 (9th Cir. 1958); 5 Moore's Federal Practice ¶ 49.03[1] (1968). We find no abuse.

■ Finally, appellant complains that the court did not adequately instruct the jury upon the law with respect to unseaworthiness created solely by the stevedore. We agree. The only instructions given upon the issue were qualified by such terms as skillful, safe, workmanlike, reasonably careful, and prudent. While they might well serve as models in stating the general principles upon which indemnity is based, they do not deal with the special problem here presented. The objection of appellant was overruled and its proposed instruction denied. Consequently, at no time was the jury instructed that the stevedore was liable in breach of warranty without fault for any unseaworthy condition for which it was solely responsible.

Judgment is reversed and the case remanded for new trial.