Ray T. ALLISON, Plaintiff,

v.

COSMOS STEAMSHIP CORPORATION, a foreign corporation, Defendant and Third Party Plaintiff Appellant,

v.

ROTHSCHILD INTERNATIONAL STEVEDORING CO., Third Party Defendant Appellee.

No. 23052.

United States Court of Appeals, Ninth Circuit.

Oct. 13, 1970.

John P. Sullivan (argued) of Bogle, Gates, Dobbin, Wakefield & Long, Seattle, Wash., for Cosmos Steamship Corp., Robert D. Duggan, Seattle, Wash., for Ray T. Allison.

Donald P. Marinkovich (argued) of Detels, Draper & Marinkovich, Seattle, Wash., for appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and TAYLOR, District Judge.*

DUNIWAY, Circuit Judge:

Cosmos Steamship Corporation appeals from a judgment denying its third

---

* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

party claim against Rothschild International Stevedoring Company. We affirm. The action is one in which Cosmos was held liable to plaintiff Allison, a longshoreman employed by Rothschild, for injuries caused by a defective piece of dunnage used in the hold of Cosmos' ship SS COSMOS MARINER, where Allison was working. The ship was under time charter to the United States. Cosmos' claim against Rothschild is for indemnity against Allison's claim. It is based on Rothschild's alleged negligence or breach of warranty of workmanlike performance. The latter's contract to load the ship was with the United States, not Cosmos. The implied warranty, however, is also "for the benefit of the vessel whether the vessel's owners are parties to the contract or not." Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413.

In denying relief to Cosmos against Rothschild, the court made the following pertinent findings:

## "II.

On April 7, 1967, the SS COSMOS MARINER was alongside the port dock, Olympia, Washington, and third party defendant, Rothschild-International Stevedoring Company, a Washington corporation, was loading cargo consisting of drums of insecticide on board the said vessel. * * *

## III.

* * * On the morning of said date plaintiff sustained injuries to his back when, while in the course of his employment, loading drums in the No. 2 lower hold of said vessel his foot broke through dunnage which contained a latent defect.

## IV.

The dunnage being used in the No. 2 lower hold of the SS COSMOS MARINER on April 7, 1967, was a type of lumber normally used for dunnage. The employees of Rothschild-International Stevedoring Company made a reasonable examination and inspection for dunnage of defective character and where such defects were patent and noted, the particular dunnage was rejected or used in areas where no hazard to the men working in the hatch was presented.

## V.

At the time of the accident involving plaintiff, Ray T. Allison, several tiers of drums had already been stowed in the hatch in question. A floor of dunnage consisting of two layers of shiplap, one by eights random length, one layer running in a fore and aft position and the other at right angles in a thwartship position, was placed between the tiers of drums. The dunnage was laid in what is customarily known as a solid floor, thus obviating the necessity of using walking boards. The dunnage used in stowing the drums was of the usual kind and the stowage of the drums was customary and normal.

## VI.

The particular piece of dunnage which broke causing injury to the plaintiff did so because of internal decay which was latent and there was no reason to suspect that this particular piece of dunnage was other than normal. In other words, there was decay within the dunnage, but it appeared normal from without.

*    *    *    *    *    *

## VIII.

That the injury to the plaintiff was solely and proximately caused by a piece of dunnage, which was latently defective, breaking when he stepped upon it. That the defect which caused the said piece of dunnage to break was the result of interior decay and such condition could not have been detected by a reasonable inspection prior to the accident.

## IX.

All the dunnage used aboard the SS COSMOS MARINER, including the dunnage in question, was provided by the United States of America.

## X.

The stevedoring services performed aboard the SS COSMOS MARINER by Rothschild-International Stevedoring Company on the date in question, including stowage of the drums and laying of the dunnage, were performed in the customary and usual manner for ports in this area and said services were in all respects performed in a safe and workmanlike manner.

## XI.

That the contractual responsibility for providing the dunnage used aboard the SS COSMOS MARINER, including the dunnage which broke causing injury to the plaintiff, Ray T. Allison, was that of the United States of America, the time charterer of the SS COSMOS MARINER, and third party defendant, Rothschild-International Stevedoring Company, was under no duty or obligation to provide said dunnage.

## XII.

Third party plaintiff, Cosmos Steamship Corporation, has failed to prove by a preponderance of the evidence that the third party defendant, Rothschild-International Stevedoring Company, was negligent in any respect or that third party defendant rendered a substandard or unworkmanlike performance of its stevedoring functions aboard the SS COSMOS MARINER.

## XIII.

That third party defendant, Rothschild-International Stevedoring Company, in all respects performed its services aboard the SS COSMOS MARINER in a safe and workmanlike manner."

Cosmos attacks some of these findings as clearly erroneous, but our examination of the record convinces us that each is supported by substantial evidence, and that none can be said to be clearly erroneous. The record shows that the dunnage was ordered by the United States from a well known supplier of such material, that it was new, that it had been placed alongside the vessel, and that some had been used the night before. It was the type of lumber regularly and customarily supplied for just the purpose for which it was used, and the manner of use was normal and customary.

When Allison's shift began work, he and a fellow longshoreman completed the laying of the floor that had been partially laid by the night shift. In doing so, they looked at each board to see whether there were defects such as knots or dry rot that would make it unsafe. Boards with such defects were not used where they would endanger the longshoremen.

In examining the boards, the longshoremen usually looked at only one side —the side that was "up" in the pile. Cosmos urges that this was a deficient inspection. We do not decide this question. The evidence relating to the board that broke is that it contained dry rot, but that the condition was not visible from the "top," and would not have been visible from the other side if the board had been turned over. This fully supports the court's findings. In the case of this board, it would have made no difference if the longshoremen had done what Cosmos says they should have done. As the court remarked in its oral opinion, "the court is not prepared to require the stevedore to make borings in every piece of dunnage to ascertain whether the interior contains decay."

Cosmos relies most heavily on the case of Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed. 2d 732. But in that case, while holding that negligence by the stevedore is not a

prerequisite to recovery by the shipowner upon the implied warranty of workmanlike performance, the Court also made it clear that "[t]he implied warranty to supply reasonably safe equipment may be satisfied with less than absolutely perfect equipment" (*id.* at 321, 84 S.Ct. at 752). Moreover, the Court repeatedly emphasized that the stevedore had furnished the equipment (*id.* at 316, 318, 322, 323, 324, 84 S.Ct. 748), and posited its decision upon the rationale that when the stevedore supplies the equipment, a latent defect may be discoverable by appropriate tests, and the stevedore knows the history of its prior use and can establish retirement schedules and periodic retests so as to discover defects. (*Id.* at 323, 84 S.Ct. 748.) None of that rationale applies here. Rothschild did not furnish the dunnage; it had no history of prior use—it was new; and Rothschild did make an appropriate inspection. To require more, in this case, would be, in substance, to require absolute perfection.

Cosmos' reliance upon Alaska Steamship Co., Inc. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798, aff'g per curiam 9 Cir., 1953, 205 F.2d 478, is misplaced. That case dealt with the shipowner's liability for unseaworthiness, not the stevedore's warranty of workmanlike performance. Here, the question is not whether the latent defect in the dunnage rendered the ship unseaworthy. It did. The question is Rothschild's responsibility for the defect.

In our case, the trial court found, upon sufficient evidence, that the inspection by Rothschild was reasonable (finding IV), that Rothschild did its job in a safe and workmanlike manner (findings X, XIII), and that Cosmos failed to sustain its burden of proving the contrary (finding XI). That, we think, is the end of the matter. *Cf.* International Terminal Operating Co., Inc. v. N.V. Nederl. Amerik Stoomv. Maats., 1968, 393 U.S. 74, 89 S.Ct. 53, 21 L.Ed.2d 58.

Affirmed.