Herman J. **PLAISANCE**, Plaintiff,

v.

**SHELL OIL COMPANY**, Defendant.

**Civ. A. No. 69–123.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Feb. 9, 1971.

John R. Martzell, New Orleans, La., for plaintiff.

Donald L. King, New Orleans, La., for third party plaintiff Shell Oil Co.

James H. Daigle, New Orleans, La., for defendant-third party defendant Sanford Marine Services.

A. R. Christovich, Jr., New Orleans, La., for third party plaintiff Movible Offshore Co., Inc.

RUBIN, District Judge:

In this admiralty action, Herman J. Plaisance, a tugboat captain, seeks to recover for injuries he suffered aboard a barge he was to tow, where he had gone allegedly to inspect the cargo. Plaisance compromised his claims against Shell Oil Company, the cargo owner, and Movible Offshore Company, the barge owner.[1] But Plaisance contends damages are still due him from Sanford Marine Services, Inc., which Shell had engaged to lift the cargo from the dock and load it onto the barge. Shell and Movible also seek indemnity from Sanford for the sums they paid Plaisance in settlement.

The cargo involved was an eight-man quarters building designed and constructed for one of Shell's drilling platforms. The manufacturer had completed assembly of the building at a dock in Berwick, Louisiana. But the building was so designed that a lifting cable could not pass from above the building to the lift pads below the building without striking the steps of the exterior stairway leading from the ground floor to the second floor of the building. Since it was contemplated that mechanical means would be used to lift the building from the dock to a barge in order to transport it to the drilling platform, the manufacturer had removed the step. It was not clear whether the manufacturer was instructed by Shell to do this, but this now appears to be immaterial.

Shell then engaged Sanford to lift the quarters building, now completely assembled but with one step removed, from the dock and load it onto Movible's barge. Sanford brought its derrick barge to the dock, lifted the building, and loaded it

---

1. Plaisance also compromised his claims against his employer, the charterer of his tug, and against the tug owner, and these claims are no longer involved in this action in any way.

onto Movible's barge. During this operation, Sanford in no way altered or modified the building. None of Sanford's employees entered the building at any time during the lift. All of Sanford's personnel then departed from the dock, leaving the building exactly as they had found it, but now on the barge instead of on the dock.

Movible's barge, with the quarters building aboard, was then moved from Berwick to the Shell Terminal in Morgan City, Louisiana, where additional equipment was placed aboard the barge.

Movible then arranged for Plaisance's tug to go to the Shell Terminal to transport the barge with its cargo to the drilling platform. When Plaisance arrived at the terminal, he was advised that the barge would not be ready to be moved until the following day, and was instructed to stand by.

That very afternoon, a few hours later, Plaisance was looking for his crew, and, in his search, went aboard the barge. He testified that, in addition, it was his intention while there to inspect the barge and its cargo, to resolve his doubts whether he would be able to handle the barge. He found his crew inside the quarters building, on the first floor. The crew told him that the quarters were very nice. Either at their suggestion, to satisfy his curiosity, or for inspection purposes, the three of them ascended the interior stairway to the second floor of the building, exited the door leading from the second floor to the exterior stairway, and with Plaisance in the lead, began descending the stairway. Perhaps because he was distracted by some welding being done in the area, Plaisance did not notice that the step was missing from the stairway. He fell through the open space, injuring himself.

There is evidence that the manufacturer, after removing the step from the exterior stairway, had placed a strip of tape across the doorway leading from the second floor of the building to the exterior stairway, and a rope or wire across the bottom of the stairway. Sanford, however, found no such warning devices, and did not erect any during its loading operations. There were no warnings when Plaisance was injured.

The evidence also shows that it is customary to lock such quarters buildings, when prepared for transportation by barge, and leave the keys in the custody of the owner. Sanford presented evidence that the building remained closed at all times during the lift operation. Yet the building was in fact unlocked when Plaisance boarded the barge.

Sanford, in loading the quarters building aboard the barge, was a stevedore loading cargo. Plaisance and Shell allege that Sanford's failure, after discovering the missing step, to take steps to protect one who might later encounter the hazard constituted negligence and breach of the stevedores's warranty of workmanlike service. Movible's indemnity claim is based on the assertion that any unseaworthiness causing its liability was "brought into play" by Sanford, constituting a breach of the stevedore's warranty and entitling Movible to indemnity.

Unquestionably Plaisance was under the duty to ascertain, at some time prior to taking the barge in tow, that the barge and cargo were properly prepared for towing and that he would be able to accomplish the task. Assuming, therefore, that Plaisance was aboard the barge in connection with the performance of a duty toward the vessel, he would then be entitled to the warranty of workmanlike service on the part of Sanford. Sanderlin v. Old Dominion Stevedoring Corp., 4 Cir.1967, 385 F.2d 79.

The issue then becomes whether Sanford breached the warranty of workmanlike service owed to Shell. I do not think that it has.

The warranty of workmanlike service is an absolute, unconditional and unqualified guarantee that the stevedore will do its work competently, safely and in a workmanlike manner. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133. It imposed upon the stevedore

a duty toward the shipowner not to create any condition of unseaworthiness aboard the vessel. But it is not a guarantee that, in the aftermath, or even as a result, of the stevedore's operations, no one will ever be hurt aboard the vessel.

█ As stated in *Sanderlin*, 385 F.2d at 81: "Repeatedly, the Supreme Court has analogized the stevedore's warranty to that of a manufacturer, who expressly or impliedly guarantees the fitness of his product for normal use." The "product" here is the service of loading cargo. The duty of competently and safely performing the stevedoring service includes providing longshoremen with safe stowage, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, competent and safe loading equipment, Italia Societa per Azioni v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, and a safe area within which to work, whether the stevedore had itself rendered the area unsafe, Waterman Steamship Corp. v. Brady-Hamilton Stevedore Co., D.Or. 1965, 243 F.Supp. 298, or noticed a pre-existing defect but failed to take steps to avoid foreseeable injury, T. Smith & Son, Inc. v. Skibs A/S Hassel, 5 Cir. 1966, 362 F.2d 745; Desiano v. Norddeutscher Lloyd, S.D.N.Y.1969, 301 F. Supp. 241; Lattin v. Flota Mercante Grancolombiana, S.A., S.D.Tex.1967, 290 F.Supp. 893; Gerking v. Furness, Withy & Co., W.D.Wash.1961, 251 F.Supp. 781. When longshoremen are injured by unsafe conditions in the course of the stevedore's operations, such conditions need not be attributable to the stevedore's negligence to render it liable. Italia Societa v. Oregon Stevedoring Co., 1964, 376 U.S. 315, 318–319, 84 S.Ct. 748, 11 L.E.2d 732.

This case is like the cases of *T. Smith & Son, Desiano, Lattin,* and *Gerking* in that it involves a noticed pre-existing defect. It is unlike them, however, in several important respects: in those cases a stevedore was held responsible for injuries occurring to longshoremen-employees in an area taken under the stevedore's custody, while it was performing its service.

█ With respect to liability for injuries occurring after loading operations were completed and the stevedore had left the scene, as was the case here, the duty imposed by the warranty of workmanlike service should not differ substantially from the duty to act without negligence. The scope of Sanford's duty toward Plaisance and the reasonableness of the risk of harm presented by the missing step are the key elements in determining whether Sanford was negligent. 2 Harper & James, Torts, Chapter 16 (1956); Prosser, Torts, Chapter 5 (1964).

Sanford caused no defects in either the barge or its cargo. See Desiano v. Norddeutscher Lloyd, S.D.N.Y.1969, 301 F. Supp. 241. It left the cargo in the same condition as it had received it; it neither stowed it unsafely nor left any unsafe equipment behind. The pre-existing condition of the missing step constituted no hazard to Sanford's employees. Because they had no need to enter the quarters building, they approached the stairway only from the ground level. Thus the condition was as clearly visible to them as it had been to Shell's employees.

I find no duty under Sanford's warranty of workmanlike service requiring it to improve the condition either of the vessel or of the cargo that it was loading. Nor was its failure to do so negligence. Sanford was not required to anticipate that after it finished its work, someone might enter the quarters building, access to which was controlled by Shell, ascend the interior steps, and descend the exterior stairway. The condition of the stairway was known to Shell, so Sanford had no duty to call it to Shell's attention. Sanford's failure to tell Shell what Shell already knew could in no way cause the accident. Indeed, even if the condition was an open and obvious danger, Sanford had no duty toward Plaisance or toward Shell to take action to avoid or avert it.

Restatement (Second), Torts Sections 314–15. Any dangerous or unseaworthy condition existing in the cargo aboard the barge was a condition neither caused nor aggravated by Sanford. Responsibility for causing the condition that resulted in Plaisance's injury lies with those who acted before Sanford.

For these reasons, the Clerk is directed to enter judgment in favor of defendant-third party defendant Sanford Marine Company, dismissing the claims of plaintiff Herman J. Plaisance and third-party plaintiffs Shell Oil Company and Movible Offshore Company. This opinion will serve as findings of fact and conclusions of law.