**UNITED STATES LINES, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 77–246–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Jan. 23, 1978.

---

Walter B. Martin, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for plaintiff.

David V. Hutchinson, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

CLARKE, District Judge.

The facts, upon which the indemnity action before this Court arises, are that a federal civil service longshoreman, William Speller, slipped on a ladder and sustained injuries while working aboard the S.S. AMERICAN CORSAIR, a vessel owned by the United States Lines and time-chartered to the United States. Speller brought an action against the United States Lines based on unseaworthiness of the vessel. Reasonable settlement was reached in the case, and Speller voluntarily dismissed the action.

The present action before the Court was brought by the United States Lines against the United States to recover the amount of the settlement plus reasonable attorney's fees and expenses expended in defense of the personal injury action. The indemnity action is based on the theory that the unseaworthy condition of the vessel was caused by a breach of the United States' warranty of workmanlike performance and on the theory that the United States was negligent in creation of or contribution to the unseaworthy condition.

The United States raises three defenses to the indemnity action:

(1) There was no breach of warranty of workmanlike performance and no negligence on the part of the United States;

(2) Speller was not entitled to bring an action against the United States Lines on a theory of unseaworthiness, therefore, any payment made by the United States Lines in settlement of such a claim was made as a volunteer and is not recoverable, *Quinn v. Central Gulf Steamship Corp.*, 1977 AMC 204 (D.Md.); and

(3) The United States is protected from suit by the United States Lines by the Suits in Admiralty Act, 46 U.S.C. §§ 741–752.

The first defense is a question of fact, the second two are questions of law.

The Court heard evidence in this case. Argument was had before the Court both orally and by brief. The Court has considered the evidence and has made findings of fact based upon that evidence.

The facts previously set forth by the Court in this Order have been stipulated to by the parties. Additionally, the parties have stipulated to damages should liability be found: the parties agree that $10,000 is a reasonable settlement amount and that $1,905.95 is a reasonable amount for attorney's fees and expenses incurred in defending the suit brought by Speller.

There is no dispute as to certain other facts. On July 16, 1974, William Speller was assigned work to be performed in the # 4 hold of the S.S. AMERICAN CORSAIR. In order to get to his work area, it was necessary for him to enter a deckhouse, proceed down through a manhole and onto a metal runged ladder. The deckhouse in which the manhole was located was used by the ship's crew for storing equipment including large cans of hydraulic fluid.

Speller's fellow workmen, federal civil service longshoremen Harry Yates and Robert Salone, had gone to work at about 12:00 or 12:30 P.M., and they both noticed they

had to walk through a slippery fluid in the deckhouse before going down the manhole. Both men, recognizing the slippery quality of the fluid, proceeded down the ladder cautiously and without incident. When Speller proceeded down the ladder later in the day he slipped and fell off the ladder causing an intra-articular fracture of the right elbow.

The Court further finds from the evidence adduced at trial that the slippery fluid had all the characteristics of and was hydraulic fluid. The Court also finds that Speller's fellow workmen and gang boss, who was responsible for the reporting of unsafe conditions aboard the vessel, knew of the unseaworthy condition approximately five hours before Speller's fall, yet they failed to warn Speller or any member of the crew and failed to do anything to correct the dangerous condition during that interval. The workmen and gang boss were employees of the United States.

▐ The Court will consider first the possibility that this case can be resolved on a factual determination. The issue is whether there was a breach of warranty of workmanlike performance or negligence on the part of the United States in causing or contributing to the cause of the unseaworthy condition. The burden of proof for establishing that the United States breached a warranty of workmanlike performance is on the United States Lines. *Rederi A/B Dalen v. Maher*, 303 F.2d 565 (4th Cir. 1962). The United States owes a warranty of workmanlike performance under the charter-party contract, clause 18 and under a theory of an implied warranty.

The Court makes two determinations in resolving this issue. These determinations were found advisable by the Fifth Circuit in *LeBlanc v. Two-R Drilling Co.*, 527 F.2d 1316 (5th Cir. 1976), a case that is factually similar to the present case. The Court first determines that the United States through its employees was aware of the dangerous condition in the deckhouse and was aware of the hazards of descending the ladder after walking through the deckhouse. The Court also determines that no employees of the United States

took steps (a) to remedy the unsafe condition, (b) inform [United States Lines] of the condition and request [United States Lines or its] crew to remedy the situation, [or] (c) on [United States Lines'] failure or refusal to correct the condition

the employees of the United States did not suspend operations. *Id.* at 1320.

The Court holds that the warranty of workmanlike performance was breached by the United States, and that breach was the proximate cause of the injury. In reaching this conclusion, the Court considers the mandate of the Supreme Court in *Italia Societa per Azioni Di Navigazione v. Oregon Stevedoring Co.*, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), that "liability should fall on the party best suited to adopt preventive measures and thereby reduce the likelihood of injury." *Id.* at 324, 84 S.Ct. at 754.

The Court finds that the United States would be liable, if proper legal basis is found, to the United States Lines for breach of the warranty of workmanlike performance. It is noted that the United States assumes the obligation of this warranty because of its position as the stevedore employer of the federal civil service longshoremen.

▐ The Court next considers the Suits in Admiralty Act defense raised by the United States. The section upon which the United States apparently relies is 46 U.S.C. § 742, which reads in pertinent part:

In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States  .   .  . .

It is the position of the United States that a private party acting as a stevedore would not be liable to the United States Lines, because the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.*, elimina-

ted stevedore indemnity to the shipowner on a theory of breach of workmanlike performance warranty. Therefore, the United States argues, it may not be sued since it stands as a stevedore who has breached its workmanlike performance warranty.

The specific amendment upon which the United States relies is the amendment to 33 U.S.C. § 905(b), which reads in pertinent part:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreement or warranties to the contrary shall be void. . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.

In this case, there is both a federal stevedore employer and a federal civil service longshoreman employee. 46 U.S.C. § 742 requires that a private party in the position of the Government be subject to suit before the sovereign immunity of the United States is lifted. This Court has hypothesized a private stevedore in the position of the United States and has applied 33 U.S.C. § 905. Such an analysis does not protect the United States; section 905 protects employers of "person[s] covered under this chapter." The federal civil service longshoreman is specifically excluded from coverage under 33 U.S.C. § 903(a)(2).

This Court determines, however, that such a narrow substitution of only a private stevedore for the United States is not realistic or within the anticipation of the Act. The hypothesized situation leaves a private stevedore as the employer of a federal civil service longshoreman. It is clear that private stevedores employ private longshoremen. Therefore, the analysis this Court relies on is the substitution of the federal character of the employer and his entire operation, including employees, for a private employer and his operation. A private stevedore and its employee, the private longshoreman, are protected by 33 U.S.C. § 905, and the employer would not be subject to an indemnity action from the vessel owner.

The Court further determines that the language of 46 U.S.C. § 742 indicates that the United States is subject to suit only in situations in which, if a privately operated vessel or a private person were involved, suit could be maintained. Therefore, if Speller had been a private longshoreman rather than a federal civil servant, suit against Speller's employer could not have been maintained because of the bar in 33 U.S.C. § 905(b). Under Section 905(b), the employer of a private longshoreman may not be held directly or indirectly liable for injuries sustained by the private longshoreman in the course of his employment. If a private longshoreman had been injured, the vessel owner, the United States Lines, could not have proceeded against the employer of the longshoreman to recover damages indirectly for the injuries of the longshoreman. Since suit could not be maintained if a private person were involved, suit may not be maintained against the United States.

Since the Court determines that a private stevedore in the same position as the United States would not be subject to suit, and the employer of a private longshoreman in the same position would not be subject to suit, the Court holds that the United States is not subject to suit under 46 U.S.C. § 742. Having so decided, it is unnecessary for this Court to consider the third defense of the United States and the applicability of *Quinn v. Gulf Central Steamship Corp.,* 1977 AMC 204 (D.Md.)

The Court directs the Clerk to enter judgment for the defendant, the United States.