The plaintiff, Anthony Short, appeals from a summary judgment entered in favor of the defendants in an action alleging liability under general maritime law and under the Jones Act for injuries Short claimed to have sustained during the course of his employment with the defendants. Short argues that the trial court resolved disputed facts and made findings of fact in connection with the summary judgment and, therefore, that the trial court erred in entering the summary judgment in favor of the defendants.[1]
In its summary judgment order, the trial court stated:
 "This cause comes before the court on defendants' Motion for Summary Judgment. After considering all pleadings and other materials filed with the court, including defendants' brief in support of their Motion for Summary Judgment and plaintiffs brief in opposition thereto, the court makes the following findings of fact and conclusions of law.
"FINDINGS OF FACT
 "1. The plaintiff is a resident of Mobile County and was employed by defendants from approximately 1977 through 1992. From 1978 through 1992, plaintiff was employed by defendant Edison Chouest Offshore, Inc. (hereinafter 'Chouest'). Plaintiff served aboard Chouest boats in the capacities of mate and captain. (Plaintiff's deposition, pp. 7, 81, 85.)
 "2. During 1991, the plaintiff developed a physical condition characterized by dyspnea, shortness of breath and related respiratory symptoms, which first manifested itself while the plaintiff was ashore at an Exxon facility in Grand Isle, Louisiana. (Plaintiff's deposition, p. 61.)
 "3. In April 1992, the plaintiff's physician, Dr. Gaeton Lorino, diagnosed his condition as occupational asthma (Lorino deposition, p. 93.), a disease which, according to both Dr. Lorino and Dr. Richard D. deShazo, whose affidavit was submitted by the defendants, is an allergic disease. (deShazo affidavit, ¶ 3; Lorino deposition, p. 83.) Specifically, according to Dr. deShazo, 'occupational asthma . . . is a lung disease caused by the abnormal function of an individual's immune system and is, therefore, characterized as an allergic disease.' (deShazo affidavit, ¶ 3.) Dr. deShazo further states that '[a]llergic asthma occurs when a harmless substance (for instance, pollen) is misperceived by the immune system as a pathogen. Thus, the immune *Page 792 
system reacts to a harmless substance as it would to an actual pathogen by production of antibodies such as IgE, which is an abbreviation for immunoglobulin E.' (deShazo affidavit, ¶ 5.)
 "4. Dr. Lorino, who made the diagnosis of occupational asthma, attributes the plaintiff's disorder to an allergic reaction to substances aboard the boats on which the plaintiff worked. (Lorino deposition, p. 83.)
 "5. Significantly, neither the plaintiff nor his physician can identify any substance aboard defendants' vessels which caused this condition. Neither can the plaintiff or his physician identify the time or place of the plaintiff's exposure to any such unidentified substance. In fact, Dr. Lorino stated in his deposition that he did not 'know of any specific substances or names that [the plaintiff] was exposed to.' (Lorino deposition, p. 87.)
 "6. If the plaintiff does in fact suffer from occupational asthma, then his condition was caused by an abnormal, i.e., allergic, response of the plaintiff's body which occurred as a result of exposure (at times unknown) to an allergen (which also is unknown). (Id.)
 "7. The allergic condition of occupational asthma occurs infrequently and is found in only an exceedingly small percentage of the population. (deShazo affidavit, ¶ 7; Lorino deposition, p. 64.) Although the figures given by each of the doctors vary slightly, it is uncontested that occupational asthma is a disease which affects, at most, only one-quarter of one percent of the population. (deShazo affidavit, ¶ 7; Lorino deposition, p. 64.)
 "8. Of the approximately three thousand five hundred (3500) or more different individuals who have served as crewmen aboard Chouest boats, only Anthony Short has asserted a claim against Chouest for occupational asthma or any other pulmonary problem during, or as a result of, service on Chouest boats. (Jack Smith affidavit, ¶¶ 2-3; Stacey Gisclare affidavit, ¶ 2.)
"CONCLUSIONS OF LAW
 "1. Under the doctrine of unseaworthiness, a vessel owner is obligated to furnish a vessel and appliances which are reasonably proper and suitable for their intended use. Complaint of Merry Shipping, 650 F.2d 622 (5th Cir. 1981).
 "2. Although the obligation imposed under the doctrine of unseaworthiness is absolute, it is an absolute obligation only to furnish a vessel and appliances which are reasonably fit. Italia Societa v. Oregon Stevedoring Co., 376 U.S. 315, 322
[84 S.Ct. 748, 752-53, 11 L.Ed.2d 732] (1964). Thus, the doctrine of unseaworthiness does not require that a vessel owner furnish an accident-free or illness-free vessel. Id.
 "3. A vessel cannot be deemed not reasonably fit for its intended use, i.e., cannot be deemed unseaworthy, if the vessel is not in some manner defective. See Waldron v. Moore-McCormack Lines, 386 U.S. 724, 726 [87 S.Ct. 1410, 1411-12, 18 L.Ed.2d 482] (1967) (holding that 'the classic case of unseaworthiness arises when the vessel is either insufficiently or defectively equipped'; emphasis added).
 "4. For plaintiff to prevail on his claim for unseaworthiness, plaintiff must establish that defendants' vessels or appliances were in some manner defective, i.e., not reasonably fit for their intended use.
 "5. The plaintiff is unable to identify any substance aboard any of defendants' vessels as the causative agent of his occupational asthma, and is thus unable to identify the instrumentality which caused his alleged injury.
 "6. Since the plaintiff cannot identify the substance which triggered his occupational asthma, he cannot demonstrate that the presence of a substance constituted a defect aboard any of defendants' vessels. Because he cannot show that any vessel was in any manner defective, the plaintiff cannot demonstrate that any of defendants' vessels were unseaworthy.
 "7. Plaintiff's failure to identify any substance aboard any of defendants' vessels as the causative agent of his occupational asthma also prevents plaintiff from prevailing on his claim for negligence. It *Page 793 
follows logically that if plaintiff cannot identify any substance aboard any of defendants' vessels as the cause of his alleged injury, he cannot prove that defendants knew or should have known of the presence of any substance aboard their boats which was supposedly harmful to the plaintiff.
 "8. The court, alternatively, concludes that the plaintiff cannot recover from defendants because there can be no recovery for injuries which result from allergic or idiosyncratic reactions to otherwise harmless substances.
 "9. The general maritime law is instructed and influenced by the common law, including the law of products liability. See Miller v. American President Lines, Ltd., [989 F.2d 1450] (6th Cir. 1993), [cert. denied, [___ U.S. ___] 114 S.Ct. 304, 126 L.Ed.2d 252] (1993)]. The standard of absolute liability imposed on manufacturers of products is essentially identical to the standard of absolute liability imposed on vessel owners. Given the essential sameness of standards of liability applicable in products liability law and in maritime actions in which recovery is predicated on unseaworthiness, the court may legitimately look to products liability decisions which have applied that standard.
 "10. Under the law of products liability, there is no recovery for injuries which result from allergic or idiosyncratic reactions to otherwise harmless substances. Griggs v. Comb, [Combe] Inc., 456 So.2d 790 (Ala. 1984) (stating that '[i]f the injured person was one who could be described as ultra-sensitive, who suffered an allergic reaction which would be suffered by a very small or insignificant number of people, then the manufacturer would not be held liable'); Gordon v. Proctor Gamble Distrib. Co., 789 F. Supp. 1384
(W.D.Ky. 1992) (noting that the general rule is 'that a plaintiff's unusual or rare idiosyncratic sensitivity does not provide a basis for recovery under any theory of product liability').
 "11. Plaintiff cannot recover for his alleged occupational asthma because the very nature of that condition is an allergic or idiosyncratic reaction to otherwise harmless substances.
 "BASED on the foregoing findings of fact and conclusions of law, and having found that there is no genuine issue of fact to be submitted to the trial court, and having concluded that defendants are entitled to [a] judgment as a matter of law, it is hereby:
 "ORDERED that defendants' Motion for a Summary Judgment is in all respects GRANTED, and summary judgment is hereby ENTERED in favor of defendants, and it is further
 "ORDERED, ADJUDGED, and DECREED that the clerk of this court enter a final judgment upon the order herein, whereby the plaintiff shall take nothing from defendants. . . .
"Dated this 16th day of June 1993."
We have reviewed the evidence, the trial court's order quoted above, and the arguments of the parties. The record indicates that there is no genuine issue of material fact and that the defendants were entitled to a judgment as a matter of law. The trial court correctly entered the summary judgment in favor of the defendants. We adopt the trial court's order quoted above as a portion of our opinion.
Short also argues that the trial court erred in failing to provide a hearing on the summary judgment motion, in failing to give notice that it was taking the summary judgment motion under submission, and in failing to provide a hearing on post-judgment motions. However, because we have concluded that the summary judgment in this case is proper, we hold that any error committed by the trial court in this regard did not prejudice Short and was, therefore, harmless. See Rule 45, A.R.App.P.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and INGRAM, JJ., concur.
[1] The trial court's order, quoted at length in this opinion, names only one of the several defendants. The others are companies related to the one named. *Page 794