APPLICATION FILED MAR. 25, 1915.

1,158,507.

Patented Nov. 2, 1915.

2 SHEETS—SHEET 1.

FIG.1.

VILLAIN & FASSIO E. COMPAGNIA,
**Plaintiff,**

v.

**ATLANTIC & GULF STEVEDORES,
INC., Defendant.**

**Civ. A. No. 6383.**

United States District Court
E. D. Virginia,
Norfolk Division.

May 3, 1968.

Vandeventer, Black, Meredith & Martin, Walter B. Martin, Jr., and Bernard G. Barrow, Norfolk, Va., for plaintiff.

Rixey & Rixey, William B. Eley, Norfolk, Va., for defendant.

KELLAM, District Judge.

Defendant is a stevedore operating in the Eastern District of Virginia. It contracted with plaintiff, owner of the SS NANDO FASSIO to load and discharge cargo at Norfolk. The work was performed on August 22 and 23, 1966. While so doing, thirteen of the longshoremen in its employ were injured. Claims were made by said thirteen longshoremen and, after investigation, the thirteen claims were settled by plaintiff. Plain-

tiff here seeks indemnity for the sums paid in settlement of said claims and for costs and attorneys' fees. The reasonableness of such settlements and the attorneys' fees and costs are established by uncontradicted evidence. The basis of plaintiff's claim is that the defendant breached its implied warranty of performance of its undertaking in a workmanlike manner.

■■ We commence with the principle of law that where a shipowner, potentially liable to a longshoreman, reasonably settles the longshoreman's claim, it has a right to indemnity from the stevedore if the shipowner can show that (a) the stevedore breached its warranty of workmanlike service, and (b) the expense incurred in defense of the claim was reasonable. American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525, 526 (4th Cir. 1964); Rederi A/B Dalen v. Maher, 303 F.2d 565, 567 (4th Cir. 1962). Where a stevedore's breach of warranty imposes liability upon the ship, the ship is entitled to indemnity from the stevedore for losses, which include expenses of litigation, and a judgment of liability is not required. American Export Lines v. Norfolk Shipbuilding & Drydock Corp., supra; Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, 386 F.2d 193, 198 (4th Cir. 1967).

■ The longshoremen's right of recovery against the ship was on grounds of unseaworthiness and/or negligence, but the establishment of either or both grounds would not of itself prevent shipowner's recovery over against stevedore. Here the right of recovery over is based on stevedore's alleged breach of warranty of workmanlike service, and such breach of warranty is not excused by reason of the fact that the ship was itself unseaworthy. Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4th Cir. 1960); Calmar SS Corp. v. Nacirema Operating Co., 266 F.2d 79 (4th Cir. 1959). If the stevedore renders substandard performance of its contract with the shipowner, the shipowner is entitled to indemnity, "absent conduct on its part

sufficient to preclude recovery." Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, at 567, 78 S.Ct. 438, at 441, 2 L.Ed.2d 491. Negligence of the shipowner or unseaworthiness of the ship will not justify a breach of warranty of workmanlike service on the part of the stevedore. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra. In order for the fault of the shipowner to relieve the stevedore of his duty under the warranty, it must, at least, prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Mere concurrent fault is not enough. Albanese v. N. V. Nederl Amerik etc., 346 F.2d 481 (2d Cir. 1965); Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, supra. The question is, who brought the unseaworthiness into play. Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne supra.

■ The failure of a stevedore to take remedial action to correct a known danger will constitute a breach of warranty and entitle the shipowner to indemnity for resulting damages. Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, supra; Smith v. United States, 336 F.2d 165, 171 (4th Cir. 1964); Gainar v. SS Longview Victory, 226 F.Supp. 912 (D.C. Va.1964). And this is true even where it is the cargo of the ship which constitutes or creates the unsafe condition. Valerio v. American President Lines, 112 F.Supp. 202 (D.C.N.Y.1952).

Turning now to the facts of this case, it is established that plaintiff's ship, SS NANDO FASSIO, put into port at Norfolk for on and off loading of cargo. The work was performed by defendant's workmen on August 22 and 23, 1966. Work commenced on the morning of August 22 about 8 o'clock a. m. on 'tween decks of hold one, and work was carried on there on August 22 and 23, and on August 23 work was also done on 'tween decks of hold two. The lower decks of hold one and hold two were loaded with "pencil pitch." It is a solid remnant from the distillation of coal tar, which is in pencil shaped pieces. The "pencil pitch" had been loaded in Baltimore

through a "chute." To assist in the loading and to prevent the spread of dust, large tarpaulins were hung around the hold from the top deck to the hatch opening in the lower hold. After the loading, and before the ship arrived in Norfolk, the hatches to the lower holds were closed and covered with tarpaulins and/or plastic.

On August 22, within one or two hours after defendant's workmen commenced work on the 'tween deck of hold one, they felt an itching sensation on their faces, eyes, necks, arms and hands. This was reported to the "hatch boss" between 9 and 10 o'clock a. m. on August 22, who reported it to the stevedore's foreman. The itching and burning continued all that day and during the next day. The "hatch boss" asked the mate to turn on the blowers, but they stirred up so much dust, they were immediately turned off. On the evening of August 22, some of the men went to DePaul Hospital to obtain relief from the burning and itching, and after work was completed, all of them went to see Dr. Mallory Andrews. Some of the workmen testified they saw Dr. Andrews on the 23rd, but the Doctor testified from his record that he saw them on the 24th, and two or three of them on the 25th. While the evidence is in conflict as to when they saw Dr. Andrews, it is uncontradicted that the itching commenced soon after the men started work on the morning of August 22, and that it was reported promptly to the "hatch boss." The evidence further establishes the condition was reported to the stevedore's foreman. No protective clothing was furnished, no order was issued to stop work, the matter was not reported to the ship,[1] and no investigation was made to determine the cause of the "itching" until after the work was completed. Dr. Andrews testified all the men were suffering with itching faces, necks, arms, and some with irritated eyes. He diagnosed it as mild skin irritation as a result of coming in contact with something on the ship. He later

learned, after an occupational health physician had made a study of the matter (the cargo of the ship and the symptoms) that the itching had been caused by pencil pitch. Dr. Carl U. Dernehl, an expert, testified by deposition that in his opinion the itching complained of was the result of exposure to pencil pitch dust. Dr. Andrews testified that direct contact with the dust—such as putting one's hands in it—was not a prerequisite to the itching; that exposure to it through the air was sufficient to cause the itching.

The evidence is further uncontradicted that pencil pitch had been a part of the cargo on this ship and other ships before and no difficulty had been experienced by workmen while working aboard such a ship. In fact, the expert witnesses who testified on behalf of plaintiff and defendant said they had never experienced anything like this before.

What was the duty of the defendant when the workmen reported the itching after an hour or two of work on August 22—the first day? All of the men were experiencing the itching and burning of the eyes, and immediately reported it to the hatch boss, and he reported it to the foreman. No report was made to the ship on August 22 or 23 (Deposition of Antola, p. 9).

George M. Hughes, Superintendent of Hampton Roads Stevedore Company, a man with years of experience, testifying as an expert said that if an unsafe condition existed, he would immediately stop the men from work until it was corrected, and report the matter to the ship's chief officer. It seems to be clear, this duty is imposed by law on the stevedore. Here the stevedore had notice the men were experiencing difficulty—complaining of itching and eyes burning—and the ship did not have notice. It was promptly brought to the attention of the hatch boss (who also experienced the same difficulty) and the stevedore foreman.

1. The mate is reported to have told one of the stevedore's foremen that coal was loaded in the lower hold.

In Albanese v. N. V. Nederl Amerik Stoomv Maats., 346 F.2d 481 (2d Cir. 1965), the stevedore became aware of monoxide gas fumes in an area where its men were working. Stevedore asked that the ship's blowers be turned on to ventilate the area, but did not stop its men from working. The Court instructed the jury that the stevedore's request for ventilation was sufficient to absolve the stevedore, if the ship failed to turn on the ventilators. The Court said the jury could find that the stevedore did not fulfill "his duty of workmanlike service under his warranty to the owner in permitting the men to continue work in the hold after the stevedore had notice of the conditions in the hold."

In Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4th Cir. 1960), a longshoreman was thrown from a ladder which had several bolts missing from it. The stevedore's safety man had observed the bolts missing from the ladder, but thought it was safe. The Court held that the stevedore's standard of performance to do the job properly and safely was not met when the "Stevedore's safety man is placed on notice that a bolt type ladder * * * to be used by * * * longshoremen to gain access to a place of work, is not secured by bolts." At page 181, the Court continued, "he must not assume that a safe condition exists when he has notice that such may not be the case."

In Smith v. United States, 336 F.2d 165 (4th Cir. 1964), the Court held that the fact that the representative of the stevedore upon examination found a ladder reasonably safe for use would not excuse the stevedore's "failure to discharge its contractual obligation." The stevedore "may think the ship safe and seaworthy, but this is no defense if in fact it was unsafe and unseaworthy, according to applicable standards." And further, the Court at page 171, said:

"* * * Courts have not been disposed to turn aside claims for indemnity when the stevedore has had actual notice of a dangerous condition and has failed to take any step to

remedy it [citations omitted]. We cannot sanction holding the stevedore faultless and denying the longshoreman his remedy, when the stevedore does nothing to avoid a known danger and the longshoreman is given no practical choice but to work under dangerous conditions."

In Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, supra, a quantity of syrup had been spilled on the 'tween deck of the vessel LELEWEL. The crew had attempted to clear this area and to cover any slippery spots with sawdust. Some of the syrup had accumulated under part of the cargo and was not discovered until the longshoremen were discharging the cargo. The longshoremen were slipping in the syrup and the "hatch boss" had knowledge of the facts. He did not think it presented "a situation of danger" and he did not think it necessary "to stop the work and request the shipowner to remove the substance." One of the longshoremen who had been working in the area later slipped and fell from a ladder, apparently from the slippery substance on his shoes. The longshoreman recovered in his action against the shipowner, and shipowner sought indemnity from the stevedore. Stevedore contended the shipowner brought about the defect which caused the injury, and since it was aware of the defect it should not be indemnified. At page 197 of 386 F.2d, the Court said:

"* * * It is undisputed that the stevedore had knowledge of the unseaworthy condition and did nothing to remedy it despite its opportunity to do so. The stevedore permitted its men to work in the hold after it knew of the presence of the syrup and this set the unseaworthy condition into play. Certainly the shipowner did nothing to prevent or handicap the stevedore from discharging its duties. It would have been a small matter to stop the work and permit the shipowner to remove the syrup.

* * * * * *

"Giving the stevedore the benefit of every inference that may reasonably be

drawn from the evidence we are still left with the inescapable conclusion that its knowledge of the presence of the slippery substance on the deck of the hold rendered it liable for failure to perform its job properly and safely, and in breach of its implied warranty of performance of its undertaking in a workmanlike manner."

Stevedore had knowledge of the condition existing. When the complaints were made, work should have been ordered stopped until the cause of the condition could have been determined and action taken to eliminate the cause. If prompt action had been taken, no doubt the dust could have been removed, or the men furnished with protective clothing. As Dr. Dernehl testified, if they had been removed from exposure at lunch time, their reaction would have been less severe.

■ Even though the shipowner may have been guilty of negligence and the ship unseaworthy, this does not exonerate the stevedore for its breach of warranty of workmanlike service. Stevedore was in charge of the operation and charged with supervising the work. It was in a better position than shipowner to avoid the accident. "Liability should fall upon the party best situated to adopt preventive measures" and to "reduce the likelihood of injuries." Italia Societa etc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). A stevedore should be held liable to indemnify the shipowner "where it has knowledge of an unseaworthy condition or brings such condition into play." Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, supra, 386 F.2d page 197.

■ Plaintiff is entitled to recover over against defendant for the sum of $6,600.00 paid in settlement of claims asserted against plaintiff, and the sum of $1,681.20 attorneys' fee and costs advanced by the attorneys, together with costs of this proceeding. See Old Dominion Stevedoring Corp. v. Polskie Linie Oceaniczne, supra. Judgment is accordingly entered for said sums.